CLASON'S POINT LAND COMPANY, Appellant, *v.* LEAH SCHWARTZ, Respondent, Impleaded with MOJAY REALTY CORPORATION and Another, Defendants.

First Department, March 10, 1933.

*Harry M. Smith* of counsel [*Harry E. Ratner* with him on the brief; *Albert W. Pross*, attorney], for the appellant.

*Morris Mostoff* of counsel [*Benj. J. Goldman* with him on the brief; *Morris Mostoff*, attorney], for the respondent.

SHERMAN, J. In this foreclosure suit the question has arisen as to whether or not the lien of the mortgage held by plaintiff should

be decreed to attach to the entire tract of real estate described in the complaint or whether respondent is entitled to have eliminated therefrom a portion of the premises by virtue of payments claimed to have been made under the release clause in the mortgage.

Respondent Schwartz purchased the property subject to plaintiff's mortgage, and continued to be the owner on June 1, 1929, the date of maturity of the mortgage. The mortgage was in the sum of $38,000. After maturity and on July 15, 1929, respondent paid on account of principal the sum of $5,000. Thereafter, and in January, 1930, she made an agreement with plaintiff whereby the mortgage, then in the principal amount of $33,000, was extended and it was agreed that $3,000 was payable on June 1, 1930, and the balance of $30,000 on December 1, 1931.

No payment on account of principal was thereafter made, except that of $3,000 in June, 1930, and defendant was then in default for non-payment of the first half taxes of 1930. This foreclosure suit was commenced about a year thereafter (the mortgage having meanwhile become due by virtue of the acceleration clause therein contained), at which time respondent was in default for all the taxes for the year 1930 and the first half of the 1931 taxes which, with penalties and interest, amounted to $1,481.87, and, in addition, there was then due and unpaid interest amounting to $2,645. Accordingly, when this action was commenced, not only were there defaults in payments of taxes and interest but the mortgage, by its terms, had matured.

Respondent's answer contains separate defenses and a counter-claim. In substance, she asserts that when the $5,000 payment was made, she demanded a release of fifty feet frontage of the mortgaged land and also that plaintiff had promised to release four parcels, each twenty-five feet in width, at the time when the $3,000 payment was made; and further that on June 1, 1930, plaintiff had agreed to waive interest and payment of all taxes until December 1, 1932, in consideration of her promise not to bring suit to compel the release of the four parcels.

At trial respondent introduced no evidence to support these affirmative claims, calling no witnesses. She chose to rest at the conclusion of plaintiff's evidence and now contends that even though demands for these releases as averred had not been made, she is nevertheless entitled, as a matter of law, to a release of a total of four parcels. This position has been upheld by the Special Term in the judgment which is here for review.

The release clause of the mortgage is as follows: " The mortgagee will agree to release from the lien of this mortgage parts of the above-described premises upon receiving payment on account of principal

in the amount of two thousand dollars ($2,000) for each parcel of land twenty-five (25) feet or less in width, it being understood, however, that in no instance is a release to be required which would leave the mortgagee a lien on parcels of land having less than 100 contiguous feet frontage. At the time of the delivery of any releases the mortgagor shall pay the interest accrued on the amount paid and also the charges of the attorneys for the mortgagee for drawing the release which shall be fifteen dollars ($15) and any incidental disbursements."

The extension agreement contained no specific reference to any right to release any part of the premises. The foregoing extract requires that the portion to be released be definitely fixed so that the mortgagee may not be left with a lien on parcels of land having less than one hundred contiguous feet frontage. It also requires that at the time of the delivery of the release the mortgagor shall pay accrued interest and an attorney's charge and disbursements.

The evidence does not reveal that any demand for a release was made at any time prior to the commencement of the action. The judgment below imports that even though no demand was made nor any tender of the attorney's charge or disbursements, and, although respondent was in default when the payments were made, and the payments were in the amounts of $5,000 and $3,000 which might have entitled her to fractional lots, i. e., two and one-half lots on the occasion of the first payment and one and one-half lots on the later occasion, nevertheless those payments in and of themselves must be construed as made for the purpose of obtaining releases. This would mean that the payments in themselves necessarily carried the right to exempt certain parts of the property from the lien of the mortgage and would require the court now to pick out the parcels (out of about nineteen lots each twenty-five feet more or less in width) which in its present judgment should have been released to the respondent at those times.

We have reached the conclusion that respondent is not entitled to the relief awarded in that respect in the judgment, but that under the proof in this case the lien of the mortgage attached to the entire tract and that the judgment of foreclosure should provide for the sale of the land, undiminished by the parcels to which respondent lays claim under the release clause.

To ascertain the objects and purposes of the mortgage, the instrument must be examined as a whole. The mortgagee was entitled to payment and satisfaction of the mortgage debt at a specified time and to the preservation of the security intact until such payment and satisfaction. The mortgagor was bound, among other things, to make semi-annual payments of interest and to pay

taxes, assessments and water charges on the mortgaged premises. The release clause is not to be viewed as independent of the mortgagor's covenants. The various provisions of the mortgage must here be construed together as dependent stipulations. The right in the mortgagor to pay stipulated amounts for the release of parts of the mortgaged premises was a privilege of which she might have availed herself, but apparently did not. The payment of the interest and taxes was, on the other hand, a definite obligation.

Furthermore, respondent may not have the aid of a court of equity in enforcing a privilege under a contract, when she herself has disregarded, and failed to perform, other essential obligations resting upon her. The relief here granted is virtually a direction that there be specific performance by the mortgagor of the release clause, notwithstanding respondent's failure to perform obligations undertaken by her and arising out of the same contract. The stipulations for the partial release when read in connection with the other provisions of the mortgage show the intent of the parties that the mortgagor should have that right only so long as she was not in default. (*Fulton* v. *Jones*, 167 App. Div. 765; *Ryan* v. *Rizzo*, 114 Conn. 467, 472; *Harris Realty Co.* v. *Epstein*, 266 Mass. 366, 370.)

If respondent's contention be tenable, she might, while in deliberate default in not carrying out her contract, select the more valuable lots by paying the stipulated price and leave the less valuable lots unredeemed, no matter how long a time might elapse before a sale at foreclosure and no matter whether the mortgagor continued at all times to be in default in the payment of the charges which were imposed upon her by the very instrument which contained the release privilege.

Indeed, the court may not grant equitable relief to a mortgagor in default, any more than compel payment of the full amount of an insurance policy although a premium payment, necessary to keep the policy alive, had not been made. (*Whiteside* v. *North American Accident Ins. Co.*, 200 N. Y. 320; *Wheeler* v. *Connecticut Mutual Life Ins. Co.*, 82 id. 543, 552.) When a foreclosure suit has been begun, the mortgagor's right thereafter to assert a claim to a release of lots from the lien of the mortgage has gone. (*Gillies* v. *Dyer*, 93 N. J. Eq. 635.)

In *Fulton* v. *Jones* (*supra*) the minority of the court stated the view that the right to a release continued up to the time of the entry of judgment, but the majority held otherwise and the language found in the prevailing opinion of LAUGHLIN, J. (p. 769), is pertinent: " The only real question in the case is whether the mortgagor, or her grantee, had the right to exercise the privilege of tendering

one-half the amount of the indebtedness secured by the mortgage, and obtaining a release of one of the parcels to be then designated, after the principal became due. * * * Assuming that there was a sufficient tender and that it was kept good, I am of opinion that the privilege of obtaining a release was lost by the failure to duly demand it before default in payment of the principal. The question depends upon the intention of the parties, and that is to be determined from the provisions of the mortgage with respect to the release. It is manifest * * * that the privilege was only to be exercised by the service of the notice and tender of the money in advance of the time the principal became due, for otherwise by the service of the notice the period of payment could be postponed beyond the due date unqualifiedly fixed by the mortgage, and this is emphasized by the provision to the effect that the whole of the principal shall become due after any default ' anything herein contained to the contrary notwithstanding.' "

The same view was expressed in *Werner* v. *Tuch* (52 Hun, 269), that a mortgagor in default was not in a position to enforce a release. That case was affirmed in the Court of Appeals (127 N. Y. 217), which apparently did not pass upon that question, holding that the tender had not been kept good.

That an affirmative duty rested upon the mortgagor to repair her default and make a tender of the items appearing in the release clause was recognized in *Tuthill* v. *Morris* (81 N. Y. 94), it being held (p. 99): " In view of the serious consequences resulting from the refusal of such a tender, the proof should be very clear that it was fairly made, and deliberately and intentionally refused by the mortgagee, or some one duly authorized by him, and that sufficient opportunity was afforded to ascertain the amount due. At all events, it should appear that a sum was absolutely and unconditionally tendered, sufficient to cover the whole amount due. The burden of that proof is on the party alleging the tender."

Respondent brings to our attention the decision in *Rosenberg* v. *General Realty Service, Inc.* (231 App. Div. 259), where the Fourth Department passed upon a motion upon the pleadings to dismiss a defense contained in an answer, which pleaded, among other things, a tender to plaintiffs, immediately after the commencement of the foreclosure action, of the amount stipulated under a release clause for a release of lots, and that such tender had been refused, but had been kept good. On the question of whether advantage could be taken of the release clause after the mortgagor's default in an interest payment, the court did not regard the cases of *Fulton* v. *Jones* (*supra*) and *Werner* v. *Tuch* (*supra*) as decisive, but as the mortgage and the accompanying bond were not set out, and as the

court had no means of ascertaining the intention of the parties in the light of possible provisions of the contract, all that was determined was the sufficiency of an answer and it was held to have disclosed enough facts to warrant some equitable relief.

In other jurisdictions it has been squarely held that a mortgagor is not entitled to a release unless he makes demand for the release of specific lots or parts of the mortgaged premises, and pays or tenders the price stipulated at the time of demand; also that a release clause contemplates that payment and demand for a release should be concurrent. (2 Jones Mort. [8th ed.] § 1259.) This may vary according to the terms of the covenant, but it is clear that there should be proof that the payments made by a mortgagor are definitely made as payments for releases. The proof in this case is defective in that respect, and since respondent's payments were not in multiples of the unit of $2,000 and no demand for such releases was made at the time of payments, nor any tender of the charges, the payments made must be treated as having been made solely to reduce the principal and not to procure any release. One payment the mortgagor was bound to make under the terms of the mortgage extension agreement; the other payment was made after the mortgage was past due.

Not having waived any of its rights under the mortgage, plaintiff had the right to the entity of its security, and it would be inequitable to now require plaintiff to release any portion thereof.

The judgment, in so far as it is adverse to plaintiff, should be reversed, with costs, new findings consistent with these views made, and plaintiff granted relief as prayed for in its complaint, with costs.

FINCH, P. J., MERRELL, MARTIN and TOWNLEY, JJ., concur.

Judgment, in so far as it is adverse to plaintiff, reversed, with costs, and judgment directed for plaintiff as prayed for in the complaint, with costs. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.