MARSHALL & ILSLEY BANK, Trustee, Respondent, vs.
GREENE and others, Appellants.

*January 12—March 15, 1938.*

156

158

, For the appellants there was a brief by *Rix, Barney & Kuelthau,* attorneys, and *G. Carl Kuelthau* of counsel, all of Milwaukee, and oral argument by *G. Carl Kuelthau.*

For the respondent there was a brief by *Miller, Mack & Fairchild* and *Churchill, Bennett, Churchill & Davis,* and oral argument by *Claude J. Hendricks* and *William H. Churchill,* all of Milwaukee.

NELSON, J. The decision of this controversy hinges upon the construction which should be given to the release-of-lands, dedicating-of-streets, and platting provisions heretofore recited in the statement of facts.

The precise questions for decision are: (1) Are those provisions, properly construed, personal to Mr. Greene, or are they covenants running with the land and therefore available to Residence Realty Corporation? (2) If those provisions, properly construed, are covenants running with the land, did they continue to have force and effect only so long as the mortgagor or his assign was not in default, or up to the time that the action was commenced, or up to the time that judgment was entered, or until the sale on foreclosure is confirmed?

The defendants first contend that the release clause is a covenant running with the land, the benefits of which inure to Residence Realty Corporation, especially since it appears that such grantee is a corporation wholly owned by Mr. Greene except as to the qualifying shares.

The only case found in our Reports which involves a similar question is that of *Pierce v. Kneeland,* 16 Wis. *672. The particular provision there construed was quite different from the present release provision as will clearly appear from a reading of it. It was as follows:

"That whereas the said Wilder Pierce has, by deed, bearing even date herewith, sold and conveyed to the said Allison Lewis and Jonathan Taylor, certain real estate, in the schedule hereunto attached more particularly described, for

the consideration of twelve thousand dollars, two thousand dollars of which has been paid down and the remaining sum of ten thousand dollars being secured to be paid by the joint and several bond of the said Allison Lewis and Jonathan Taylor, secured by a mortgage of the said property; and, whereas, the said *Allison Lewis and Jonathan Taylor are desirous of selling and conveying portions of the said real estate, and giving a title free and discharged from the said mortgage so far as the same can be done* without impairing the security of the said Wilder Pierce: Now, therefore, in consideration of the premises, and of one dollar to him paid by the said Jonathan Taylor and Allison Lewis, the said Wilder Pierce *covenants and agrees to, and with the said Allison Lewis and Jonathan Taylor,* that he will, at any time on receiving any of the amounts in the schedule marked opposite to one or more of the said lots, so far as he can, without releasing the balance that may be due on the said bond and mortgage, and without releasing other portions of the said real estate specified in the said mortgage, release the lot or lots marked opposite such amounts so paid, *provided. all and singular the covenants and conditions in the said bond and mortgage specified shall have been faithfully kept and performed by them, the said Allison Lewis and Jonathan Taylor."* Cases and Briefs, vol. 59, January term, 1863.

That agreement was considered by the court to be personal in its character, and one that did not inure to the benefit of subsequent purchasers; and it was held that the mortgagors could insist upon the release only upon strictly performing the conditions of the bond and mortgage, by making all payments of principal and interest as they became due; and that even if the stipulation was one running to subsequent purchasers and not personal, as intimated, yet the conditions were not performed upon which the release was to be made.

It is quite apparent that the court did not ground its decision upon its conclusion that that particular stipulation did not run with the land, but rather upon the conclusion that

the covenants and conditions of the mortgage were not faithfully kept and performed by the mortgagors or their assigns. The provision here, according to its terms, contains nothing requiring us to hold that it was intended by the parties that the release privilege should be exercised only by Mr. Greene. True, the provision does not provide that the privilege may be exercised by his assigns. That in our opinion is not controlling.

While the courts are not in accord in construing clauses relating to the release of lands and incorporated into mortgages, as will appear from an examination of the numerous authorities digested in an annotation to be found in 93 A. L. R. page 1027 *et seq.,* the following conclusion of the annotator seems to be well supported by the authorities:

"By the great weight of authority it is held that such a covenant for partial release is not solely for the benefit of the mortgagor, but that, in the absence of a contrary intention expressed in the agreement, it runs with the land or inures to the benefit of purchasers from or other privies of the mortgagor, even where it does not expressly mention such privies. And this is true whether the undertaking of the mortgagee runs specifically to the mortgagor, or generally without specification of any person."

In 1 Jones, Mortgages (8th ed.), p. 103, § 98, the same conclusion is expressed:

"Whether such a covenant running only to the mortgagor, without mention of his assigns, is personal in character, and cannot be enforced by a purchaser from him, is a question upon which the authorities are not agreed, but the better view is that such a covenant runs with the land."

Many authorities in support of "the great weight of authority" or "the better view," might be cited. They may be found in the annotation and the text referred to. A citation of the following authorities is deemed sufficient: *Vaw-*

*ter v. Crafts,* 41 Minn. 14, 42 N. W. 483; *St. Louis Union Trust Co. v. Chicot County Cotton-Alfalfa Farm Co.* 127 Ark. 577, 193 S. W. 69; *Nims v. Vaughn,* 40 Mich. 356; *Taylor v. Carter,* 211 Mich. 365, 178 N. W. 712; *Kerschensteiner v. Northern Michigan Land Co.* 244 Mich. 403, 221 N. W. 322; *Gammel v. Goode,* 103 Iowa, 301, 72 N. W. 531.

There are, of course, many decisions holding such provisions or agreements to be covenants running with the land where the words "assigns or grantees" are mentioned, and there are some decisions which hold that where the grantees or assigns of the mortgagor are not mentioned, the covenant is personal. There are other decisions based upon constructions given to particular release agreements. The annotation, hereinbefore referred to, is so complete no useful purpose would be served by reviewing the numerous authorities there digested. Since this court has not heretofore construed a release provision similar to the one here, we feel free to follow the great weight of authority and the better rule. As to the defendants' first contention, it is our conclusion that the release provision should be construed as a covenant running with the land. We need not, therefore, determine whether Mr. Greene's ownership of all of the stock in Residence Realty Corporation, except qualifying shares, would be considered controllingly material, and render a release personal to Mr. Greene, available to it.

The defendants next contend that the release clause is not dependent upon other covenants in the mortgage which Mr. Greene, the mortgagor or his assigns agreed to perform, but that it continues in force and effect during the lien of the indenture, after default, after commencement of the foreclosure action, after judgment and up to the time of the entry of an order confirming the sale pursuant to the judgment. Whether this contention is sound depends upon the

construction which should be given to so much of the release provision as provides:

"The trustee shall from time to time *during the lien of this indenture* release any of the herein mortgaged property upon the payment," etc.

The meaning of the remainder of the provision is so clear as to give rise to no necessity for construction. The question to be determined depends upon the meaning of the clause "during the lien of this indenture." In construing provisions contained in mortgages, the question always is, What did the parties intend in using the language? In ascertaining the meaning intended by the parties to a written contract, the language employed is considered in connection with the nature and object of the transaction and read in the light of the other provisions of the contract and the circumstances surrounding its execution. *Farmers' Loan & Trust Co. v. Commercial Bank of Racine,* 15 Wis. *424. In construing the words "during the lien of this indenture," the well-settled law as to the nature of a mortgage in this state may be taken into consideration. Throughout the history of this state, even reaching back into its territorial days, it has been held over and over again that the interest of a mortgagee under a real-estate mortgage is in the nature of a lien only. *Wood v. Trask,* 7 Wis. *566; *Mason v. Beach,* 55 Wis. 607, 13 N. W. 884; *Brinkman v. Jones,* 44 Wis. 498; *Gregory v. Rosenkrans,* 72 Wis. 220, 39 N. W. 378; *Slaughter v. Bernards,* 97 Wis. 184, 195, 72 N. W. 997. The lien theory, not the title theory, exists in this state. In *Slaughter v. Bernards, supra,* in an exhaustive opinion by Mr. Justice MARSHALL, it was said:

"Many other authorities might be cited, but enough has been said to settle beyond reasonable controversy that under the territorial statutes of 1839 a real-estate mortgage, *till after the extinguishment of the equity of redemption in the*

*manner provided by law,* vested in the mortgagee a mere lien, and that a taking possession even of the mortgaged premises did not operate to vest the legal title to the land mortgaged, in the mortgagee."

The court thus applied to mortgages, prior to statehood, the same rule which has been applied to mortgages since. In 41 C. J. p. 892, § 1114, it is stated:

"A valid and completed foreclosure operates to extinguish the lien of the mortgage, as where it is by a sale under a power in the mortgage or by a valid and enforceable sale, under a valid and subsisting decree or judgment,"—

citing many cases which support the conclusion that the lien of the mortgage persists until destroyed by sale of the premises thereunder. While the argument that the lien of a mortgage ceases to exist upon the entry of a foreclosure judgment may be plausible, we conclude that it would be unsound to so hold. A judgment on foreclosure does little more than determine that the mortgagor is in default, the amount of principal and interest due and unpaid, the amount due the plaintiff mortgagee for taxes, etc., which he has been compelled to pay and which he is entitled to have added to the amount of principal and interest, and to determine the amount of the attorney's fee. The judgment does not destroy the lien of the mortgage but rather judicially determines the amount thereof.

Under our law, which recognizes only the lien theory of mortgages, it would seem that the clause "during the lien of this indenture" must mean that period of time during which the lien of the mortgage persists, and that the release provision here construed will continue in force and effect so long as the lien of the mortgage exists. Looking to the nature and object of the transaction, and considering the language of the covenant in the light of the other provisions of the

mortgage, and the circumstances surrounding its execution, our conclusion is further fortified. The surrounding circumstances show that at the time the mortgage was given Mr. Greene was a large dealer in real estate. He was the owner of large tracts of unimproved land situated in Milwaukee county. Prior to the giving of the mortgage he was apparently a man to whom great credit had been extended by the largest banks in Milwaukee without requiring him to furnish security, collateral, or indorsers. In 1934, the banks demanded that Mr. Greene furnish security. The notes to the plaintiff trustee and the mortgage to secure them resulted. The fact that the trustee was willing to incorporate into the mortgage the agreement that the failure of Mr. Greene as mortgagor to pay the taxes on the properties mortgaged for the years 1928, 1929, and 1930 should not be considered a default, permits of the inference that, under the circumstances which existed, Mr. Greene was then and probably would be for some time thereafter, financially unable to pay those taxes. The further fact that it was agreed that the nonpayment of taxes for the year 1931, and subsequent years, should not be deemed a default under the mortgage until such time as, by nonpayment of taxes, the properties should become subject to the issuance of a tax deed to the holder of tax certificates, permits of a like inference. The fact that the mortgage contained a release clause permits of the inference that its purpose and object were to facilitate sales by Mr. Greene for prices greater than the assessed valuation thereof for the year 1932, and to give to him an opportunity to sell lands at a profit which would permit him to continue in business and perhaps ultimately pay off his indebtedness. Where the owner of numerous parcels of unimproved lands or platted subdivisions gives a mortgage containing a release clause, it is clear that the purpose of

such a clause is to facilitate sales of such properties, freed from the lien of the mortgage. *Vawter v. Crafts, supra; Gammel v. Goode, supra.*

The release clause did not provide that the privilege thereunder could be exercised only before default or before the commencement of a foreclosure action or before judgment. It might have provided that the release privilege should cease and determine upon the happening of a default on the part of the mortgagor, *Pierce v. Kneeland, supra,* or the commencement of foreclosure proceedings, or the entry of judgment. It however did not do so. It simply provided in general terms that "the trustee shall from time to time during the lien of this indenture release any of the herein mortgaged property" upon payment of certain ascertainable sums. Looking at the provision several years after it was entered into, the banks may now consider the mortgage contract both unwise and improvident. However, that can have nothing to do with the construction of the contract entered into. We are of the opinion that the language, fairly construed in the light of the circumstances which surrounded its execution, and in connection with the established law that a mortgage gives rise to a lien only which persists until the equity of redemption is extinguished in the manner provided by law, impels the construction that the release clause effectively continues until the equity of redemption is extinguished by sale and confirmation.

*By the Court.*—The part of the judgment appealed from is reversed, and the cause remanded with directions to the trial court to modify the judgment in accordance with the opinion.

FAIRCHILD, J. (*dissenting*). The failure to accord full extent to the effect on the obligation of one party to a contract of a default by the other party is the basis of my objections to the decision. A contract is a plexus of mutual

rights. It necessarily comprehends performance of various acts. Where the contract is executory on both sides and where the mutual promises are dependent, performance by one party cannot be required by the other party when in default amounting to a failure of consideration. 5 Page, Contracts (2d ed.), p. 5257, § 2977. In the case of *Helbig v. Bonsness, ante,* p. 52, 277 N. W. 634, we dealt with a situation so similar to the facts now before us as to make the decision in that case a precedent here.

The majority in their opinion say: "A judgment on foreclosure does little more than determine that the mortgagor is in default." When that important fact has occurred, we naturally require a redemption from the default before the one in default is to be accorded the benefit of the contract. The decision also says:

"Under our law, which recognizes only the lien theory of mortgages, it would seem that the clause, 'during the lien of this indenture,' must mean that period of time during which the lien of the mortgage persists, and that the release provision here construed will continue in force and effect so long as the lien of the mortgage exists."

In the mortgage, specific provision is made as to what shall constitute a default, and it is expressly stipulated that there shall be excused certain delinquencies which ordinarily would constitute a default, but the obligations of the mortgagor are fixed and his failure to discharge his obligations deprive him of a right which he can establish only by relieving the default. The mortgage was given to secure the payment of a debt. Terms were agreed upon evidently calculated to assist the mortgagor in paying this debt, and to this extent at least, benefiting both debtor and creditor. The real estate was pledged as security. The mortgagor is now in default, and the mortgagee has begun a foreclosure action, yet without relieving his default, the mortgagor seeks to benefit himself by compelling the mortgagee to submit to

the imposition of terms which would give the mortgagor the privilege of freeing from the mortgage a portion of the pledged security at a price fixed under the terms of the mortgage when a default on his part did not exist and was not anticipated. The release clause is not to be viewed as independent of the other provisions of the mortgage.

The theory of partial release as expressed in well-reasoned cases is that the covenants of the mortgage with respect to the payment of the mortgage debt and the privilege of partial release are not to be disassociated in the absence of specific provisions therefor. It therefore follows, it seems to me, that the breach of payment of sums due according to the terms of the mortgage and the permitting of the default to exist suspends the mortgagor's rights arising under the release clause.

In the case of *Baldwin v. Benedict,* 111 Iowa, 741–743, 82 N. W. 956, the mortgagor requested the mortgagee to release certain parcels of land after an action had been commenced to foreclose the mortgage. At the time of the execution of the mortgage, the mortgagee executed a written agreement providing for partial releases as follows:

"I hereby agree to and with the said Geo. H. Benedict upon the payment to me of the purchase money, to wit, one hundred dollars per acre, I will release from said mortgage such portion so paid for at any time during the pendency of the above-described mortgage."

The court was there of the opinion that it was too late after default for the defendant to demand the release. The court said: "True, the mortgage was pending, but not in the sense meant by this contract." A similar case, *Avon-by-the-Sea Land & Improvement Co. v. Finn,* 56 N. J. Eq. 805, 807, 41 Atl. 366, dealt with a mortgage containing a covenant for a partial release. The court, in speaking of the

covenant to release "at any time during the existence or continuance of the mortgage," said:

"If the peculiar language . . . may be interpreted to extend the covenant to a time after condition broken, it would hardly carry it beyond the filing of the bill to foreclose. So far as the mortgagee was concerned, that was a decisive step towards devoting the security to the debt."

I am convinced that under the material events in this case, particularly the default and the foreclosure action, the contractual right to a partial release cannot be insisted upon without lifting the default. *Ryan v. Rizzo,* 114 Conn. 467, 159 Atl. 272; *Reed v. Jones,* 133 Mass. 116, 119; *Clason's Point Land Co. v. Schwartz,* 237 App. Div. 741, 262 N. Y. Supp. 756, 759; *City Bank Farmers Trust Co. v. Heckmann,* 164 Misc. 234, 297 N. Y. Supp. 592, 595. The mortgagor's right to a partial release under the terms of the mortgage prior to his default is distinct from the right he may have under sec. 278.14, Stats., after judgment and before sale in the discretion of the court.

I am authorized to state that Mr. Chief Justice ROSEN-BERRY concurs in this dissent.