468 F.2d 1222
 In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.
Appeal of MANUFACTURERS HANOVER TRUST COMPANY, as Indenture
Trustee, in No. 72-1497.
Appeal of BANKERS TRUST COMPANY, as Indenture Trustee, in
No. 72-1498.
Appeal of GIRARD TRUST BANK, Indenture Trustee under the
Pennsylvania General Mortgage dated June 1, 1915 and Morgan
Guaranty Trust Company of New York, Indenture Trustee under
the New York Central and Hudson River Railroad Company
Refunding & Improvement Mortgage dated October 1, 1913, in
 No. 72-1499.
 Nos. 72-1497 to 72-1499.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 1, 1972.
Decided Oct. 16, 1972.
 
 Edward Roberts, III, New York City, for appellants in Nos. 72-1497 and 72-1498.
 Alan S. Fellheimer, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellants in No. 72-1499.
 Herschel E. Sparks, Jr., Sage, Gray, Todd & Sims, New York City, for appellee, New York State Urban Development Corp.
 Marvin Comisky, Philadelphia, Pa., for trustees.
 Before SEITZ, Chief Judge, and VAN DUSEN and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 These are appeals from Order No. 706, 346 F.Supp. 1323, dated May 10, 1972, as amended by Order No. 720, dated May 24, 1972, of the United States District Court for the Eastern District of Pennsylvania (Reorganization Court), in the reorganization proceedings, under Section 77 of the Bankruptcy Act, 11 U. S.C. Sec. 205 (1970), of the Penn Central Transportation Company, Debtor (Penn Central). Order No. 706 requires the appellants, Manufacturers Hanover Trust Company, Bankers Trust Company and Morgan Guaranty Trust Company of New York (collectively, Indenture Trustees), as trustees of three systemwide mortgages (Hudson River Mortgages)[1] covering a portion of Penn Central's railroad to release from the lien of the Hudson River Mortgages a parcel of property (subject property) situated in Niagara Falls, New York.
 
 
 2
 The subject property, consisting of 58.903 acres, was conveyed by Penn Central to the New York State Urban Development Corporation (UDC) on December 30, 1969, approximately six months prior to the commencement of the reorganization proceedings below, for a total cash consideration of $346,000.
 
 
 3
 Although the subject property was encumbered, inter alia, by liens of the Hudson River Mortgages which secured a debt of approximately half a billion dollars, Penn Central did not complete the procedure provided for in the mortgages for obtaining releases. Rather, Penn Central, at the closing, delivered a letter informing UDC that the releases from the Hudson River Mortgage liens had been requested and agreeing to deliver the releases to UDC immediately upon receipt by Penn Central. Penn Central further agreed in that letter to indemnify UDC if the liens were collected out of the subject property.
 
 
 4
 At the time of the closing, Penn Central had in fact not requested such releases, allegedly since the consideration was not to be paid by UDC until January 14, 1970. In March of 1970, it was discovered that there was no independent appraisal of the property as required by Manufacturers Hanover Trust Company, trustee of the mortgage constituting the prior lien on the property, and a request was made to Penn Central's Syracuse real estate office to secure such an appraisal. Before that could be accomplished, the reorganization proceedings were instituted on June 21, 1970, and Penn Central took no further action to obtain the mortgage releases.
 
 
 5
 UDC, in April 1971, petitioned the Reorganization Court for an order, inter alia, requiring Penn Central to secure the necessary mortgage releases by remitting to the Indenture Trustees the amount of the consideration paid by UDC, or, in the alternative, directing the Indenture Trustees to issue the mortgage releases without further payment. The trustees of the debtor concurred in the latter request to require the Indenture Trustees to release the subject premises from the liens of the Hudson River Mortgages. On September 9, 1971, the Reorganization Court entered Order No. 422, in which the response and memorandum of law filed by the Penn Central Trustees were deemed to be a petition by the Trustees seeking issuance of the mortgage releases.
 
 
 6
 In conformance with Order No. 422, the Penn Central Trustees submitted to each of the Indenture Trustees formal requests for mortgage releases, together with an affidavit by an independent appraiser valuing the subject property at the time of conveyance at $296,450. The Penn Central Trustees further certified to the Reorganization Court that the value of the additions and betterments constructed at the debtor's Selkirk Yard after the conveyance of the subject property but prior to June 21, 1970, was in excess of the proceeds derived from the conveyance.
 
 
 7
 A hearing on the basis of affidavits was held with regard to the petition of the Penn Central Trustees on October 12, 1971.
 
 
 8
 On May 10, 1972, the Reorganization Court entered its Opinion and Order No. 706,[2] directing the Indenture Trustees to execute and deliver to the Penn Central Trustees appropriate mortgage release documents in consideration of the substitute security represented by the additions and betterments which had been certified by the Penn Central Trustees. The Indenture Trustees dispute Order No. 706 on two grounds: first, that the Reorganization Court was without jurisdiction over the subject matter of the Penn Central Trustees' claim; and, second, that even if there was jurisdiction, the Hudson River Mortgages did not provide for releases under these circumstances.
 
 
 9
 The jurisdictional argument is not without problems. Section 77(a) of the Bankruptcy Act, 11 U.S.C. Sec. 205(a) (1970), gives the Reorganization Court "exclusive jurisdiction of the debtor and its property wherever located." Thus, the Reorganization Court did not have jurisdiction over the subject property itself, since it was no longer the Penn Central's, or over the claims of UDC and the Indenture Trustees for that property, even if it affects the Penn Central's estate. See In re South Jersey Land Corp., 361 F.2d 610 (3d Cir. 1966); In re Magnus Harmonica Corp., 233 F.2d 803; 237 F.2d 867 (3d Cir. 1956). But the Reorganization Court did not assert such jurisdiction. Rather, the Reorganization Court asserted jurisdiction only over the Penn Central's claim that the Indenture Trustees, having filed a claim in the Reorganization Court, were obligated to release their liens on the subject property. As to this basis of jurisdiction, we agree with the Reorganization Court.
 
 
 10
 Ordinarily, when an obligation is disputed, the Trustees must proceed against the alleged obligor in a plenary action brought in a court of general jurisdiction. In re Lehigh Valley RR., 458 F.2d 1041 (3d Cir. 1972). It is only where there is no question about the existence of or entitlement to the obligation that a reorganization court has jurisdiction. In re Penn Central Transportation Co., 453 F.2d 520 (3d Cir. 1972). There is, however, an exception where the trustees' claim arises out of the transaction that is the subject matter of the alleged obligor's proof of claim filed against the debtor in the reorganization proceeding. See In re Carnell Construction Corp., 424 F.2d 296 (3d Cir. 1970). In the present case, were the Indenture Trustees to move against the subject property while wrongfully withholding releases, Penn Central would be liable to UDC for the value of the property and for UDC's expenses and legal fees in view of the indemnity agreement in the above-mentioned letter delivered at the closing. See A. C. Israel Commodity Co. v. American-West-African Line, Inc., 397 F.2d 170 (3d Cir. 1968). Although the first element of liability would be offset by a decline in the amount to which the Indenture Trustees would be entitled under their mortgages, the second element would constitute damages to Penn Central. Having arisen in connection with the Indenture Trustees' attempts to enforce the mortgages, which are the basis of their proof of claim, these damages could properly be asserted in a compulsory counterclaim. Cf. F.R.Civ.P. 13(a). As the Reorganization Court would have had jurisdiction over such a counterclaim, we think it had jurisdiction over the petition by the Penn Central Trustees to procure the releases.
 
 
 11
 Turning to the above-mentioned second ground of the Indenture Trustees, we have concluded that the terms of the mortgages do not give the Trustees the right to such releases under the special circumstances of this case. The failure of Penn Central and UDC to notify the Indenture Trustees of the sale until April 1971 (approximately 10 months after the debtor's petition was filed), the delay in the request to the Indenture Trustees for releases until October 1971, and the absence of a factual basis for the district court's finding of a "reasonable prospect of successful reorganization" (140a), preclude its right to secure such releases in this proceeding.
 
 
 12
 The terms of the mortgages make clear that when the Penn Central is in default and is being reorganized, it has no right to compel the Indenture Trustees to give it a release.
 
 A. 1897 GOLD BOND MORTGAGE
 Art. Six, Sec. 1, provides:
 
 13
 "Upon the written request of the Railroad Company, approved by resolution of its Board of Directors, or the Executive Committee, from time to time, while the Railroad Company is in possession of the mortgaged premises, but subject to the conditions and limitations in this Section prescribed, and not otherwise, the Trustee shall release from the lien and operation of this indenture any part of the mortgaged premises then subject thereto; provided [conditions omitted]."
 
 Art. Six, Sec. 4, provides:
 
 14
 "In case the mortgaged premises shall be in the possession of a Receiver lawfully appointed, the powers in and by this Article conferred upon the Railroad Company may be exercised by such Receiver, with the approval of the trustees . . . ."
 
 B. CONSOLIDATION MORTGAGE
 Art. Eight, Sec. 10, provides:
 
 15
 "In case one or more of the events of default specified in Section 3 of Article Six hereof shall have occurred and shall be subsisting, the Trustee shall not, on the request of the Rail-Company, execute a release of any of the property subject to this indenture. If such an event of default shall have occurred and shall be subsisting, then, in case any of the property subject to this indenture shall be in the possession of a receiver lawfully appointed, the powers in and by this Article Eight conferred upon the Railroad Company and which it might exercise but for the default may be exercised by such receiver with the approval of the Trustee . . . ."
 
 C. REFUNDING AND IMPROVEMENT MORTGAGE
 
 16
 Art. Eleven, Sec. 11, of the Refunding and Improvement Mortgage is substantially identical to Art. Eight, Sec. 10, of the Consolidation Mortgage, quoted above.
 
 
 17
 In Fulton v. Jones, 167 App.Div. 765, 153 N.Y.S. 87 (1st Dept. 1915), the court said:
 
 
 18
 "Assuming that there was a sufficient tender, and that it was kept good, I am of opinion that the privilege of obtaining a release was lost by the failure to duly demand it before default in payment of the principal. The question depends upon the intention of the parties, and that is to be determined from the provisions of the mortgage with respect to the release."
 
 
 19
 See, also, Clason's Point Land Co. v. Schwartz, 237 App.Div. 741, 262 N.Y.S. 756 (1st Dept. 1933); 41 A.L.R.3d 7, 56-57 (1972), "Mortgage Partial Release Provisions."[3]
 
 
 20
 That the Indenture Trustees, if requested, had to grant the releases at or about the time of settlement in December 1969 does not mean that they continue to have the authority under the mortgages to do so, given present circumstances. They were not even notified of the sale until April 1971, more than a year and three months after settlement and over ten months after the Petition for Reorganization filed in June 1970. Moreover, the evident purpose behind the mortgage provisions quoted above is to protect the bondholders from being required to relinquish claims on existing collateral when the value of the replacement collateral is in doubt. Although the district court found that the amount of additions and betterments to the Penn Central's property between December 1969 and June 1970 exceeded $346,000., the present value of these additions and betterments apparently depends on the success of the reorganization of the lines covered by the subject mortgages. The record before us does not contain support for the district court's statement that "there is a reasonable prospect of successful reorganization" of those parts of the Penn Central lines covered by these mortgages. For example, no favorable history of earnings performance of these lines since June 1970 appears in this record. We therefore hold that it was improper for the district court to order the Indenture Trustees to furnish the releases. Cf. Central Railroad Co. of New Jersey v. Manufacturers Hanover Trust Co., 421 F.2d 604 (3d Cir. 1970). However, this ruling is without prejudice to the right of UDC and the Penn Central Trustees to apply in the future for an order that the Indenture Trustees release the property from the mortgage liens if the district court makes appropriate findings, for example the probable success of the reorganization of the railroad operations on these lines or the fair market value of the Selkirk Yard improvements, etc., on the basis of an adequate record.
 
 
 21
 For the foregoing reasons, Order No. 706, as amended by Order No. 720, will be vacated.
 
 
 
 [1]
 The New York Central and Hudson River Railroad Company 3 1/2% Gold Bond Mortgage, dated June 1, 1897, Manufacturers Hanover Trust Company, Trustee; the New York Central and Hudson River Railroad Company Consolidation Mortgage, dated June 20, 1913, Bankers Trust Company, Trustee; The New York Central and Hudson River Railroad Company Refunding and Improvement Mortgage, dated October 1, 1913, Morgan Guaranty Trust Company of New York, Trustee
 
 
 [2]
 Order No. 706 provided as follows:
 "ORDER NO. 706
 "AND NOW, this 10th day of May, 1972, it is ORDERED that the Manufacturers Hanover Trust Co., Morgan Guaranty Trust Co., and Bankers Trust Co., indenture trustees of the 'Hudson River Mortgages,' shall execute and deliver to the Trustees of the Debtor appropriate documents releasing from the liens of their respective mortgages the premises in Niagara Falls, New York conveyed by the Debtor to the New York State Urban Development Corporation on December 30, 1969, within 20 days from the date of this Order, in consideration of the substitute security represented by the additions and betterments to said property heretofore certified by the Trustees. Upon receipt of the releases, the Trustees are directed to deliver them to the New York State Urban Development Corporation."
 This order was subsequently amended to change "20 days" to "30 days."
 
 
 [3]
 This language is used at pages 56-57:
 "It is not unusual for a partial release provision, or for the mortgage or other security instrument in which such provision is included, to contain stipulations or conditions to the effect that the right or privilege of obtaining releases of portions of the encumbered premises in accordance with such provision may be exercised only at a time when there is no default in making payments as required on the secured indebtedness or in otherwise complying with the terms and conditions of the mortgage or security instrument; or, as sometimes stated, that it may be exercised only before maturity of the secured indebtedness-which is, in broad effect, before default.
 "With substantial unanimity, the courts have given effect to such limitations upon the availability of a partial release provision . . . ."