MORIAL, Judge.
Fidelity Mortgage Corporation (FMI), a Massachusetts Real Estate Investment Trust, instituted foreclosure proceedings against Louisiana Purchase Corporation *774 (LPC), a Louisiana corporation, on January 24, 1973. Notice of foreclosure was served on Overland Investments, Ltd. (OIL), a North Carolina limited partnership, Overland-Louisiana (OL), a Louisiana partnership, L. S. Hiern and Doris Dodd Hiern, as guarantors of the primary obligations of LPC. On April 16, 1973, LPC petitioned for a writ of injunction and sought a temporary restraining order which was refused. After a trial on the merits, the petition for injunction was dismissed. On the date of the foreclosure sale, April 23, 1973, LPC applied for a new trial and again petitioned for a temporary restraining order. The district court issued the temporary restraining order and granted a new trial. On April 25, 1973, the Succession of Perry H. Corbett, a subordinate mortgagee intervened. The basis of the intervention is that LPC by virtue of a notarial declaration of June 9, 1971 has a vested right to the release of lots in parcel III, or parcel IX or both, which would result in intervenor’s mortgage being superi- or in rank to plaintiff’s mortgage. After the new trial, judgment was rendered modifying the temporary restraining order previously entered and in the form of a preliminary injunction releasing to LPC from the mortgage and foreclosure sale three hundred seventy (370) lots of parcel III to be selected by LPC.
FMI has appealed. We affirm.
The pertinent uncontroverted facts are as follows: On April 15, 1971, LPC, with several original guarantors including L. S. Hiern and Doris Dodd Hiern, entered into a loan agreement[1] with FMI pursuant *775 to which LPC contemporaneously executed a series of documents; namely, (1) mortgage, (2) promissory note, and (3) pledge agreement.[2] The paraphed promissory note in the amount of $1,732,500 was secured by the mortgage on nine parcels of property referred to in the loan agreement and provided for repayment “ * * * together with interest thereon from date at the rate of fifteen (15%) per cent per an-num payable monthly as follows: The interest shall be due on the first day of each month for the preceding month (or the portion thereof following the date of this Note) and payable on or before the fifteenth (15th) of each month and at matu *776 rity. Interest payments that are due on the first will be in default if not credited to the Trust Bank Account by the fifteenth (15th) of each month and this Note shall bear interest at the rate of eighteen (18%) per cent per annum from the first of the month until credit is received by the Trust Bank. The principal amount hereof shall be paid on or before thirty-six (36) months from the date hereof. * * * ”
In lieu of a letter of credit requirement of the loan agreement, the parties agreed to the pledge to FMI of a certificate of deposit owned by LPC in the amount of $825,-000. This certificate of deposit was purchased from proceeds of the loan.
The release clause of the loan agreement was not within the act of mortgage. Accordingly, to place the release provisions in recordable form, on June 9, 1971, FMI executed a document, styled, “Notarial Declaration” in favor of LPC, which after referring to the act of mortgage, provided in part:
“ * * * WHEREAS, the appearer has heretofore agreed and does now declare in favor of Louisiana Purchase Corporation, maker of the aforesaid note and mortgage, that so long as Louisiana Purchase Corporation is not in default under the aforesaid note and mortgage, appearer, Fidelity Mortgage Investors, agrees that any time and from time to time to release any one or more of the parcels of incumbered property, upon receipt from Louisiana Purchase Corporation, for application and reduction of the principal amount of the mortgage, of the applicable amount with respect to the parcel or parcels to be released, * * *(emphasis supplied)
This instrument included the same schedule of payment for release of property as the loan agreement.
Sometime prior to January 31, 1972, LPC had failed to make the required interest payments. After discussions between FMI and LPC, on January 31, 1972, a triparty agreement, was executed involving FMI, LPC, and OL, a general partner of LPC, who had acquired the property subject to the FMI mortgage via an act of sale and assumption. This agreement provided that the assumed obligations of OL and the obligations of LPC were joint, several and in solido. In addition to releasing certain original guarantors and substituting therefor OIL, the agreement declared:
“ * * * The Pledge by LOUISIANA PURCHASE CORPORATION in favor of FIDELITY is hereby cancelled. Simultaneously with the execution of this agreement the certificate of deposit in the amount of $825,000.00, which is the object of the Pledge is being redeemed and OVERLAND LOUISIANA, as owner of the certificate of deposit by virtue of the terms of the partnership agreement by which it was created, hereby delivers to FIDELITY the sum of $825,000.00, receipt of which is acknowledged. Of that sum, it is agreed that $675,000.00 will be applied to the reduction of principal on the Note thereby reducing the principal amount of the Note and loan to $1,057,500.00. The balance of $150,000.00 will be placed by FIDELITY in a non-interest bearing escrow account to be applied first by FIDELITY to any interest on the Note that is now due and payable. Thereafter, FIDELITY will draw from said interest escrow account any amount or amounts that may hereafter be due to FIDELITY as interest on the Note. * * * ”
Monies placed in the escrow account continued the interest payments on the note current until FMI notified LPC in writing on August 17, 1972, that the loan was in default for failure to pay the monthly interest installments due on June 1, July 1, and August 1, 1972, and in view of the defaults, plaintiff caused executory process to issue and this litigation arose.
Was the acceptance by FMI of $675,000.00 from the redemption of the pledged certificate of deposit on January *777 31, 1972, a payment “for application and reduction of the principal amount of the mortgage,” which at that time, vested in LPC and/or OL the right to a release of lots of parcel III from the mortgage absent a request of LPC and/or OL or any guarantor for a release prior to the commencement of foreclosure proceedings?
Plaintiff argues (1) it is inconceivable that a mortgagee should be required to release two items of security, i. e., certificate of deposit and real estate while LPC was in default on January 31, 1972; and (2) where no time period is stipulated within which a mortgagor is to demand a release the commencement of foreclosure bars mortgagor’s right to assert such a claim in the foreclosure proceedings when no prior demand has been made.
Defendant and intervenor contend that the defendant was not in default under LSA-R.C.C. Art. 1911 when FMI accepted $675,000 in reduction of the principal and became vested of right to a release from which it could not be divested by subsequent default or institution of executory process.
For LPC to be entitled to the benefits of the release clause a payment for application to reduction of principal had to be made while LPC was not in default. The evidence is clear that LPC had failed to make the required interest payments as of January 31, 1972. Considered alone, Section 6.1 of the loan agreement deems the mortgagor to be in default at that time; however, Section 6.2 requires a notice of default and a specific time allowance for curing the act of default and a specific time allowance for curing the act of default as condition precedent to LPC being in default. This requirement of notice to the mortgagor and the fifteen (15) day waiting period is a valid and binding condition precedent to the exercise by the mortgagee of any remedies contained in Section 6.1 of the loan agreement of Section 5 of the pledge agreement. It is lawful for parties to enter into such notice requirements as set forth in Section 6.2 of the loan agreement and Section 4 of the pledge agreement.[3]
An issue herein is whether the interpre-. tation of specific clauses of certain documents govern the methods of putting in default as provided in LSA-R.C.C. Art. 1911. In the presence of the notice provisions and time allowance for curing a default specifically provided for in the documents, it is unnecessary to invoke LSA-R.C.C. Art. 1911 to correctly determine the question of whether or not LPC was put in default.
We find the requirement of notice to the mortgagor and the fifteen (15) day waiting period of the loan agreement and the ten (10) day notice and waiting period of the pledge agreement valid and binding as conditions precedent to the exercise of any remedies granted the mortgagee. If the plaintiff as mortgagee determined to its own satisfaction that the defendant, as mortgagor, was in default, it should have complied with the requirements of the pertinent notice provisions of the loan agreement and pledge agreement. This record discloses that the plaintiff failed to do so.
We observe that at no time prior to or on January 31, 1972, did FMI avail itself of any clause maturing the mortgage obligation or the pledge agreement, but entered into the agreement of January 31, 1972 declaring:
“WHEREAS, OVERLAND INVESTMENTS, LTD., has agreed to guarantee *778 the loan in consideration of the release of the aforementioned guarantors and in further consideration of a cancellation of the Pledge, redemption of the certificate of deposit, reduction of the principal amount of the loan by $675,000.00 and the creation of an interest reserve to pay interest on the Note in the amount of $150,000.00; *. * *.” (emphasis supplied)
FMI accepted not only past due interest, and an escrow account for future interest payments, but accepted and received $675,000.00 in reduction of the principal for a new guarantor and let the matter rest until it complied with Section 6.2 of the loan agreement on August 17, 1972, after the interest escrow account was liquidated and the June, July and August 1972 interest payments became delinquent.
The causa, or consideration as it is called at common law, for FMI’s cancellation of the pledge, and permitting redemption of the certificate of deposit, reduction of the principal amount of the loan by $675,000.00, and the creation of an interest reserve of $150,000.00 was, as is clearly stated in the agreement of January 31, 1972, the guarantee of OIL.
We observe that conceding arguendo, without the required notice, LPC was in default on January 31, 1972, then the payment of past due interest, which was all that was due, cured the default at that time. FMI accepted payment on the principal of the note which by its terms was not matured, but FMI could have caused its maturity by availing itself of the clause maturing the entire obligation.
In effect, FMI treated the matter as if no default had occurred on January 31, 1972, and consequently, as if the release clause was in full force and effect at the time payment was made for reduction of the principal. FMI is in no position to successfully urge that the payment of approximately one-third (1/3) of the principal, when payment of principal was made prior to maturity or demand, contemporaneously with the payment of all past due interest and more than four (4) months interest in advance, was made at a time when the defendant was in default.
It is apparent the release provision contemplates a payment on the principal prior to demand or maturity while the mortgagor is not in default. LPC did just that on January 31, 1972.
Plaintiff argues that the payment of the principal was a “general reduction” of the mortgage indebtedness since defendant did not state the funds were to be allocated to the application of releases. This position is untenable. The release provision simply provides, “ * * * for application in reduction of the principal amount of the mortgage, of the applicable amount with respect to the parcel or parcels to be released, * * It was not a requirement that the defendant state it was paying in accordance with the release clause schedule per lot or acre, except to designate the lots or acres it desired released, to avoid any payment in reduction of principal being a “general reduction” of the mortgage indebtedness.
Doubts, if any, in the release clause must be resolved against the mortgagee; ambiguities or doubtful language in a contract must be construed against the party who has obligated himself. With respect to the release of certain parcels from the operation of the mortgage, the plaintiff-mortgagee was the obligor. LSA-R. C.C. Art. 1957; Deering Harvester Co. v. C. L. Smith Farm Land Development Co., 146 La. 301, 83 So. 580 (1919).
The evidence as to whether defendant ever requested a release prior to foreclosure is in conflict. That issue we need not resolve.
*779 Under the release clause it is the fact of payment while not in default that entitled the mortgagor to a release. The release clause stipulates no specific time when the release must he demanded, it binds the mortgagee to grant the release at any time and from time to time upon receipt from the borrower of an amount for application in reduction of the principal.
Payment having been made by the defendant, the right to a release accrued, and the agreement became an executed contract on the part of the defendant and entitled it to demand performance at any time of that part which had accrued in its favor. Therefore, defendant is not es-topped to demand the release because it waited until after it was notified of its default and the commencement of foreclosure for a subsequent breach.
Plaintiff argues that defendant’s insistence upon a release after foreclosure suit was initiated is “an inequitable request.” We cannot agree.
The release clause granted mortgagor an absolute right. Nothing in the release clause required that a request for releases must be made before or at the time of payment or that a payment absent a request for a release had any effect in and of itself to waive or surrender the right to a release. We find nothing in this record indicative of a surrender or waiver, or any action or conduct by defendant that makes defendant’s insistence upon its absolute right via an injunction after executory process has begun inequitable. Schexnayder v. Capital Riverside Acres, 170 La. 714, 129 So. 139 (1930) and cf. Orlando Orange Groves Co. v. Davenport, 77 F.2d 148 (5th Cir. 1935).
For the foregoing reasons the judgment of the district court is affirmed.
Affirmed.

. Relevant to a resolution of this dispute are the following provisions:
V.
Provided Borrower and Guarantor are not in default under this agreement or under The Note and The Mortgage, Lender agrees : 5.1 At any time and, from time to time to release any one or more of the parcels of The Property, upon receipt from Borrower, for application in reduction of the principal amount of The Mortgage, of the applicable amount with respect to the parcel or parcels to be released, in accordance with the following schedule:
Parcel I (Addition #1) $1,025.00 per lot + $150 per Lot fee
Parcel II (Addition #2) $ 925.00 per lot + $150 per Lot fee
Parcel III (Addition #3) $1,670.00 per lot + $150 per Lot fee
Parcel IV (369.8 acres) $ 600.00 per acre + $150 per Acre fee
Parcel V (255 acres) $ 600.00 per acre + $150 per Acre fee
Parcel VI (53 acres) $ 600.00 per acre + $150 per Acre fee
Parcel VII (334 acres) $ 600.00 per acre + $150 per Acre fee
Parcel VIII (97 acres) None
Parcel IX (Golf Course)
145 acres None
For purposes of this Article V, the parcels referred to shall be the parcels as described in The Mortgage.
5.2 Borrower shall be entitled to a partial release with respect to any lot in Parcels I, II, or III, without other condition except payment of the release price, (emphasis supplied)
# * * * %
VI.
6.1 The occurrence of any one or more of the following shall constitute an act of default and shall, at Lender’s option, entitle Lender to demand immediate payment of The Note, in principal, interest, and immediately exercise all remedies conferred upon Lender by this agreement or under the terms of The Note, The Mortgage, or the guarantees herein provided or otherwise conferred upon Lender by law:
(a) The failure of Borrower to pay interest monthly on The Note from the date of such advance at the rate provided for in The Note;
(b) The failure of Borrower and/or Guarantor to observe or perform any of the obligations to be performed by Borrower and/or Guarantor under the terms of this agreement, The Note, The Mortgage, or any instrument executed in Connection here *775 with, including the violation of any representation or warranty by Borrower and/or Guarantor contained in this agreement, The Note and The Mortgage;
(c) The failure of Borrower to pay any taxes and assessments of any kind applicable to The Property, including real estate taxes, before same become delinquent;
(d) The failure of Borrower to pay premiums on insurance policies required under this agreement;
(e) The filing of a voluntary or involuntary petition in bankruptcy under any chapter of the bankruptcy act, making any assignment for the benefit of creditors, or being insolvent;
(f) The institution of foreclosure action against The Property, or the filing of a lien against The Property which is not removed of record, bonded, or dismissed within ten (10) days after such filing;
(g) Any condition or situation which, in the sole determination of Lender, constitutes a danger or impairment to the security of the loan and such condition or situation is not remedied within ten (10) days after written notice to Borrower to remedy such condition or situation, Lender agrees that it will not exercise this right in an unreasonable manner.
6.2 Borrower shall be entitled to thirty (30) days written notice to cure any default in the due observance or performance of any other covenant, stipulation or condition required to be kept by the Borrower hereunder and under the terms of The Note, The Mortgage, or the guarantees herein, other than the payment of any principal or interest, insurance premiums, taxes or assessments. Lender agrees to give Borrower fifteen (15) days interest, insurance premiums, taxes or assessments, and Borrower shall cure such default within said fifteen day period by payment accompanied by a late charge computed at the amount of such payment. Lender shall be required to give only two notices of any such default, and Borrower shall not be entitled to any grace period thereafter. (emphasis supplied)
‡ ‡ $
XII.
The Note and The Mortgage provided for herein shall speefically incorporate this Agreement by reference and in the event that The Note and The Mortgage are duly assigned, this Agreement shall be considered assigned in like manner.

. Provisions pertinent to this case are:
# tj* ífc sjs >¡:
4. The following shall constitute events of default:
(a) If a default in the payment of any installment of principal or interest or other payments now or hereafter required on Note, as and when the same shall become due and payable, and such default shall have continued for a period of ten (10) days after receipt by the Undersigned of notice of suah default-, (emphasis supplied)
* * * * *
5. If an event of default shall occur, the Lender without further notice (except for notices provided in Paragraph 4 hereof) ■ shall have the following rights and remedies at any time thereafter (which rights and remedies shall be cumulative and not exclusive and which may be exercised concurrently and/or in any order and shall be in addition to any rights and remedies which the Lender may otherwise have) :
(a) enforce all of the rights granted to the Lender under the Pledge and/or the Note; and
(b) cause any Collateral held by it in pledge (if not already registered in the name of the Lender or its nominee or nominees) to be registered forthwith and thereafter to be held in the name of the Lender or its nominee or nominees) to be registered forthwith and thereafter to be held in the name of the Lender or its nominee or nominees, and to cash or redeem all and any portion of Collateral at any maturity date thereof and to apply all or any portion of the proceeds of said Collateral to the payment of all or any portion of teh obligation or the curing of any default under the Note amd/or Agreement and/or any other Collateral provided for in said agreement; * * *. (emphasis supplied)
v íf» jJ* sjí

. Cf. Bollinger v. Republic Petroleum Corporation, 194 So.2d 139 (La.App. 1 Cir. 1967), cert. den. 250 La. 463, 196 So.2d 276, where waiting period of lease held binding condition precedent to institution of suit for cancellation of lease.