# SCOTT & WIMBROW, INC. *v.*
# WALTER S. CALWELL

[No. 709, September Term, 1975.]

*Decided March 30, 1976.*

The cause was argued before MOYLAN, GILBERT and LOWE, JJ.

*Peter Ayers Wimbrow, III* for appellant.

*Maurice F. Mackey, Jr.,* with whom were *Callahan, Calwell & Laudeman* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellee, Walter S. Calwell, is a member of the Maryland Bar, and the attorney named in a mortgage from The Great Maryland Farming Company, Inc., et al.[1], to Baltimore Federal Savings and Loan Association. As such attorney, Mr. Calwell instituted foreclosure proceedings against Great Farming and others in the Circuit Court for Worcester County, alleging an original mortgage of $350,000, with a balance due, including interest, of $319,770.88.

Following the publication of an order *nisi* in *The Eastern Shore Times* warning that the foreclosure sale in the amount of $100,000 would be ratified unless " ... cause to the contrary ... " was shown, appellant Scott & Wimbrow, Inc., filed exceptions to the sale.

Initially, the exceptions of appellant contended three things. First, appellant said it was a construction company with ". . . a recorded mechanic's . . ." lien. Second, that the sales price of $100,000 was " ... grossly inadequate to the extent of being unfair and unreasonable." Third, that the required " ... deposit was indeterminable under the 'terms of sale'...." The appellant, in a series of patchwork amendments, four in number, finally raised the total number of exceptions to eight.

The exceptions asseverated that: (1) appellant was a construction company with a recorded mechanic's lien against the property being foreclosed; (2) the foreclosure sales price was " ... inadequate, ... unfair and unreasonable ... " in relation to " ... fair market value ... "; (3) the amount of the deposit required at the time of sale was "indeterminable"; (4) although monies were to be expended by the mortgagee for the mortgagor on the improvement of the real estate, no such funds were ever disbursed to appellant; (5) ratification of the foreclosure was tantamount to taking appellant's property without just

---

1. In addition to The Great Maryland Farming Company, Inc., its president, James E. Collins, Jr., and his wife, Pamela K. Collins, individually, executed the mortgage as co-mortgagors.

compensation, and, thus, in violation of the Constitution of the United States; (6) mortgagee was being unjustly enriched; (7) appellant, as a lienor, should have been joined in the foreclosure proceeding; (8) ratification of the foreclosure constituted the taking of appellant's " . . . property without due process of law."

Appellant, at the request of Great Maryland, hauled 16,608 cubic yards of fill dirt to a property that subsequently became subject to the mortgage of Baltimore Federal. The "fill" was transported to the property during the period July 31, 1972 to September 18, 1972. Two days thereafter, C. Heurich, Jr., and Helen M. Heurich, his wife, conveyed the property to Great Maryland, who simultaneously executed a mortgage thereon to Baltimore Federal. On oral argument, we were advised that appellant, on December 8, 1972, " . . . filed a Notice of Intention to Claim Mechanic's Lien. . . . " The notice, according to appellant's brief, was filed in " . . . the Mechanic's Lien Records of Worcester County. . . . This lien was against the property in question and was for work performed and material supplied prior to the recordation of the mortgage." [2]

The exceptions were heard before Judge Daniel T. Prettyman. The judge observed in his "Opinion and Order of Court" that he would take " . . . judicial notice of the fact that a 'Petition' seeking to enforce the Mechanic's Lien was filed by Scott & Wimbrow, Inc., on December 4, 1974, and that the validity of that Mechanic's Lien . . . " was then " . . . in issue. . . . " Judge Prettyman also noted that appellant " . . . did not produce any evidence of its 'judgment lien' " and that while the court would " . . . take judicial notice of its own records . . . " it did not find therein a judgment " . . . in favor of Scott & Wimbrow, Inc. against The Great Maryland Farming Company, Inc. . . . "

We were informed, on oral argument, that such a

---

2. What authority, if any, Great Maryland had to order appellant to haul fill to the property of the Heurichs is not disclosed by the record nor was its standing to do so raised in the trial court or here. We shall consider, as the trial court seemingly did, that Great Maryland possessed the necessary authority.

judgment did exist and had been forwarded to this Court. Our Argus-eyed review of the record fails to reveal the existence of such a judgment, however.[3]

While the matter was pending before Judge Prettyman, but after hearing, both the then counsel wrote to the judge. Neither, apparently, sent opposing counsel a copy of the communication directed to the court. Judge Prettyman, however, caused a copy of each counsel's communication to be forwarded to the other.[4] In the letter from appellant's counsel, it is stated, "First, Scott & Wimbrow, Inc. is exerting a *claim prior* to that of Baltimore Federal through its recorded mechanic's lien. Second, Scott & Wimbrow, Inc. is exerting a *claim subsequent* to that of Baltimore Federal through its recorded judgment." [5] (Emphasis supplied).

We shall discuss each of the appellant's two contentions as we believe such a discussion to be dispositive of this appeal.

### Appellant as a Prior Claim Holder

If the record supported appellant's allegation with respect to such a "prior claim," it would have no standing to intervene in the foreclosure because it could, in no manner, be affected by the outcome of the foreclosure sale. Irrespective of whether the price bid at the sale was so inadequate as to be grossly shocking, or there was improper advertising of the sale, or the mortgagee improperly

---

3. The appellant has printed, as part of its brief, what purports to be "Docket Entries" in a case entitled "Scott & Wimbrow, Inc., A Maryland Corporation v. The Great Maryland Farming Co., A Body Corporation [sic]." The "docket entries" show that a judgment by confession was entered in favor of appellant against Great Maryland for $42,500, plus counsel fees and interest from the date of September 9, 1974. These "docket entries" are not part of the record and, apparently, were not part of the record before Judge Prettyman. We shall not consider them.

4. By Md. Rule 1230, the Court of Appeals adopted the Code of Professional Responsibility of the American Bar Association. Sub-Canon EC 7-35, of Canon 7, provides that " ... a lawyer should not communicate with a tribunal by writing unless a copy thereof is promptly delivered to opposing counsel. ... "

5. We have previously stated that no evidence was produced at the hearing in the circuit court of a judgment lien, nor was the trial judge able to find such a lien. Similarly, our review of the record discloses no such judgment lien.

dissuaded prospective purchasers from bidding, a prior lien would be placed in no jeopardy because it could not be extinguished, much less its effectiveness diminished.

Generally speaking, the holder of a prior lien has no standing to file exceptions in a mortgage sale conducted by a subsequent lienor because such a sale is subject to prior recorded liens. *Plaza Corp. v. Alban Tractor Co.*, 219 Md. 570, 576-77, 151 A. 2d 170, 173 (1959).

The Court of Appeals, in *Baltimore Fed. Sav. & Loan Ass'n v. Eareckson*, 221 Md. 527, 158 A. 2d 121 (1960), considered a case wherein Eareckson, the assignee of a second mortgage, instituted foreclosure proceedings against the mortgagor. The property was sold for $9,030, with Eareckson as the purchaser. Baltimore Federal, in addition to its first mortgage, had made an unsecured loan to the mortgagor sometime after the second mortgage was recorded. The loan was reduced to judgment. As a judgment creditor, Baltimore Federal filed a petition in the second mortgage foreclosure for an allowance of its claim of $794.90 out of the proceeds of the foreclosure sale after the payment of the second mortgage. There was due Baltimore Federal $6,711.15 on the first mortgage which, when deducted from the foreclosure sales price, together with a deduction for costs, left a remainder of $1,878.45. That sum was paid over to Eareckson on the second mortgage so that there was nothing left to pay the judgment creditor. Baltimore Federal excepted to the auditor's account on the basis that its judgment claim should have been paid. It asserted that the second mortgagee should have been paid first, then the judgment creditor and the balance of $4,700 paid to the mortgagors, leaving the property subject to the first mortgage. The Court, speaking through Judge Henderson (later Chief Judge), quoted, 221 Md. at 529-30, from its prior decision, *Tobin v. Rogers*, 121 Md. 249, 252, 88 A. 133, 133-34 (1913):

" . . . The first mortgagee not having been made a party, any sale under the second mortgage must necessarily have been subject to the operation of

> the first mortgage, unless the first mortgagee assented to a sale free and clear of his mortgage or voluntarily released his mortgage, or intervened in this proceeding, subjecting himself and his mortgage to the jurisdiction of the Court."

*See Tolzman v. Gwynn,* 267 Md. 96, 296 A. 2d 594 (1972). The Court agreed with the judgment creditor, noting that not only was the first mortgagee not a party and that it did not file a claim, but that it was not even shown that the first mortgage was in default. 221 Md. at 530.

We observe no difference in standing between a first mortgagee and a prior judgment lien holder. Since a first mortgagee, may, but need not, be a party to a foreclosure proceeding, it follows that a prior judgment lienor may, but need not, be a party to a foreclosure sale made by a subsequent mortgagee.

Of course, overriding what we have thus far opined, is that assuming appellant has a prior recorded mechanic's lien, such lien, under *Barry Properties, Inc. v. Fick Bros. Roofing Co.,* 277 Md. 15, 353 A. 2d 222 (1976), would be a nullity *ab initio.* Judge Digges, writing for the Court, in *Barry Properties,* said that " . . . there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.,* a declaratory judgment action)." (Footnote omitted). 277 Md. at 37.

It would, therefore, appear that under *Barry Properties,* appellant not having prevailed "in a suit to enforce the claimed lien or in some other appropriate proceeding," the alleged mechanic's lien is of no force and effect.

### Appellant as a Subsequent Claim Holder

Appellant also argues that it is a subsequent claim holder, and, as such, was entitled to notice of the foreclosure sale. We infer that appellant means "personal notice" as distinguished from the "public notice" required by Md. Rule W74 a 2 (b). The law is clearly to the contrary. Personal

notice of a mortgage foreclosure is not necessary. *Butler v. Daum,* 245 Md. 447, 226 A. 2d 261 (1967). *See also Blanch v. Collison,* 174 Md. 427, 199 A. 466 (1938). The mortgagee must endeavor to advise the mortgagor of the " . . . time, place and terms of the sale." Md. Rule W74 a 2 (c). No similar provision is contained in the Rule with respect to prior or subsequent lien holders. In any event, the issue is academic in that appellant did receive notice, apparently by way of publication of the order *nisi,* and it did file exceptions to the foreclosure.

Ordinarily, a general creditor has no standing to interpose objections to the ratification of a sale under a mortgage. *Hannan v. Lyddane,* 164 Md. 357, 361, 165 A. 308, 309 (1933).

In the case *sub judice,* since the record does not reflect that appellant is a subsequent judgment creditor, he is a general creditor and, as such, has no standing to file exceptions to the foreclosure sale. This being the status of the appellant in this case, it is unnecessary for us to discuss the merits of the exceptions filed by appellant. If it be of any solace to appellant, we have examined the exceptions relied upon by it and discover no merit therein.

Appellee raised another question by including in its brief a motion to dismiss on the ground that the property has been transferred to a bona fide purchaser after the ratification of the sale since no supersedeas bond was filed to prevent transfer pending appeal. When, as here, a mortgagee purchases at his own sale and exceptions are taken to that sale, an appeal from the overruling of such exceptions does not require the posting of a supersedeas bond. If, however, the property is conveyed to a third person while the appeal is pending, the failure to post the supersedeas bond might well render the appeal moot. In the instant case, there was, insofar as has been revealed to us, no intervening sale of the property and the appellee is still the holder of record. We are unable to fathom how appellee has been damaged by the appellant's failure to post the supersedeas bond, nor why, in this case, failure to post such bond moots the issue and thus

mandates a dismissal of the appeal. We reject, summarily, the motion to dismiss.

> *Motion to dismiss denied.*
> *Judgment affirmed.*
> *Costs to be paid by appellant.*