LEISURE  CAMPGROUND &  COUNTRY  CLUB
LIMITED  PARTNERSHIP  *v.*
LEISURE  ESTATES

[No.  143,  September  Term,  1976.]

*Decided  May  2,  1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Gerald S. Klein,* with whom was *Thomas E. Webb* on the brief, for appellant.

*Raymond D. Coates, Jr.,* with whom was *B. Randall Coates* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Leisure Campground & Country Club Limited Partnership, mortgagor in a purchase money mortgage transaction involving a 154-acre tract of land located near Ocean City, appeals from an order ratifying the foreclosure sale of that property. The appellant's exceptions to the sale, and hence this appeal, rest on the ground that a portion of the property should not have been included inasmuch as the mortgage contained a clause entitling the mortgagor, at its request and in consideration of $75,000 already paid, to have forty acres of the land released from the mortgage. The

appellee-mortgagee, Leisure Estates (a limited partnership), asserts principally that the mortgagor's right to secure release of the forty acres was extinguished upon default on the mortgage, or, in any event, when foreclosure proceedings were initiated; subsidiarily, the mortgagee contends the court cannot enforce the release clause because it lacks the degree of certainty required of provisions in contracts relating to real property. Since we conclude that the mortgagor's right to request release of the acreage as. provided in the mortgage survived both default and foreclosure, and that the clause in question is enforceable, we will modify the order of the circuit court in this case.

The purchase money mortgage executed on August 4, 1972 by the appellant to Leisure Estates secured a $175,000 debt — the balance of the purchase price after payment of $75,000, made by the time of settlement, for future release of forty acres.[1] The appellant, which planned to develop the land in stages as a campground, paid accumulated interest to February 4, 1974 on February 21 of that year, but made no subsequent payments of interest or principal; consequently, it should not have been surprising to the mortgagor when, on June 4, 1975, the mortgagee instituted foreclosure proceedings in the Circuit Court for Worcester County. By telegram and letter to counsel for Leisure Estates, the appellant on July 17 for the first time requested release of forty acres, but did not specify their location. In addition, it sought a court order that day to stay the foreclosure sale. This petition was denied by the circuit court the following day, and the sale took place as scheduled on July 19. The appellant's exceptions, filed on August 13, 1975, were overruled and the sale was ratified, the circuit court concluding that the mortgagor, having defaulted on its obligation under the mortgage, was not entitled to a partial release, and that, in any event, the court could not supply a

---

1. The security instrument contained clauses calling for interest at the rate of seven percent per annum to be paid semi-annually and for repayment of the principal sum in three consecutive annual payments of $50,000 with a final payment of $25,000. The mortgagor was released from any personal liability for the mortgage debt.

description of the forty acres to be released where the parties had failed to do so. The mortgagor, though failing to file a supersedeas bond, thereupon noted a timely appeal to the Court of Special Appeals; however, we granted certiorari before that court considered the case.

Although the appellee does not raise the question, we pause to consider whether the appellant's failure to file a bond pursuant to Maryland Rule 1017, to stay execution of the final judgment pending appeal, renders its claim for the forty acres moot. The general rule is that the right of a purchaser to receive property acquired at a judicial sale cannot be affected by the reversal of an order ratifying the sale where a bond has not been filed, *Lowe v. Lowe,* 219 Md. 365, 368, 149 A. 2d 382, 384 (1958), even though the purchaser may know that a claim is being asserted against ratification. *City of Hagerstown v. Long Meadow,* 264 Md. 481, 497, 287 A. 2d 242, 250 (1972). The policy underlying this rule is to encourage nonparty individuals to bid at such sales. While there is language in our decisions indicating that "[t]he only exception to the rule is in cases where there is unfairness or collusion by the purchaser in the making of the sale . . . ," *Sawyer v. Novak,* 206 Md. 80, 88, 110 A. 2d 517, 521 (1955), we agree with the Court of Special Appeals that a second exception exists when "a mortgagee purchases at his own sale and exceptions are taken to that sale, [in that] an appeal from the overruling of such exceptions does not require the posting of a supersedeas bond." *Scott & Wimbrow, Inc. v. Calwell,* 31 Md. App. 1, 7, 354 A. 2d 463, 467 (1976). This is so because a mortgagee who buys at a foreclosure sale does not free himself from the underlying dispute to which he is a party, and with the land in his hands, there is no reason why he should not be bound by a decision of the court requiring delivery of the property. *See generally City of Hagerstown v. Long Meadow, supra* at 497-98 [250]; *Silver v. Benson,* 227 Md. 553, 559, 177 A. 2d 898, 901 (1962); *Durst v. Durst,* 225 Md. 175, 182, 169 A. 2d 755, 758 (1961); *Maddox v. District Supply, Inc.,* 222 Md. 31, 35-36, 158 A. 2d 650, 652-53, *cert. denied,* 364 U. S. 872 (1960); *Weiprecht v. Gill,* 191 Md. 478, 484, 62 A. 2d 253, 255 (1948).

Since counsel, during the hearing on the exceptions to this sale, stipulated that the persons who constitute the corporation which purchased at the foreclosure sale are the same persons who constitute Leisure Estates, the mortgagee, and the intervening rights of innocent nonparty purchasers are therefore not involved, the filing of a supersedeas bond was not required to avoid mootness in this case.

The mortgagee's primary contention in this action is that the mortgagor's failure to request the forty acres until three days prior to the foreclosure sale divested it of its release right. We consider first the mortgagee's suggestion that our decision in *Gerber v. Karr*, 231 Md. 180, 189 A. 2d 353 (1963), prevents the mortgagor from invoking the release provision contained in the mortgage after having defaulted on its obligations under that instrument. While the appellee is correct in pointing out that we stated in *Gerber* that "a mortgagor cannot call for a partial release after defaulting on his obligations under the mortgage," *id.* at 185 [355], this language — read in light of the fact that payment for the land to be released had not been made before default, and in the context of our conclusion that the deed of trust indicated that no right of release was intended after default — is clearly inapposite here, where full payment for the release was made prior to default, and where the language of the release clause itself belies any suggestion that the right was not intended to survive default. We also reject the suggestion that the commencement of foreclosure proceedings affects Leisure Campground's right to extinguish the lien on its property.[2] Neither default nor institution of foreclosure in any way negates the fact that where full payment has been made, the mortgagor has, at the least, complete equitable ownership of the property, and the mortgagee has, at most, only bare legal title to it.

---

2. For two cases that apparently attach some significance, under different factual situations from the case before us, to the institution of foreclosure proceedings, see Chrisman v. Hay, 43 F. 552, 555 (C.C. S.D. Iowa 1890), and St. Louis Union Trust Co. v. Chicot County C.-A. Farm Co., 127 Ark. 577, 193 S. W. 69, 70 (1917).

Consequently, we now hold that, absent a contractual provision to the contrary, if a mortgagor makes full payment for a partial release of property prior to a default, he is not prevented from enforcing his accrued rights under the clause so long as he is capable of doing so without interfering with any interest nonparty bona fide purchasers have acquired at a foreclosure sale.[3] This view is in accord with the decisions of those courts which have considered the matter. *See, e.g., Conley v. Poway Land and Investment Company*, 232 Cal.App.2d 22, 42 Cal. Rptr. 636, 639 (1965); *Fidelity Mortgage Investors v. Louisiana Pur. Corp.*, 297 So. 2d 772, 779 (La. App. 1974); *Park Investment & Development Co. v. Vanderzee Bros. Bldg. Co.*, 119 N.J.Eq. 1, 180 A. 838, 839 (1935); *Cook v. Leslie*, 59 S.W.2d 302, 303 (Tex.Civ.App. 1933). *See generally* Annot., 41 A.L.R.3d 7 (1972).[4]

Here, although it is true that the mortgagor defaulted, it is obvious that it made full payment for the release of the acreage prior to that time. The total consideration for the

---

**3.** Of course, should a mortgagor inexcusably delay the assertion of his right, such a delay might constitute laches. The defense cannot successfully be raised here, however, since the mortgagee has shown no prejudice or disadvantage arising out of the mortgagor's delay in seeking enforcement of the release provision. *See, e.g.*, Anne Arundel Co. Bar Ass'n v. Collins, 272 Md. 578, 584, 325 A. 2d 724, 728 (1974); Salisbury Beauty Schools v. St. Bd., 268 Md. 32, 63, 300 A. 2d 367, 385 (1973).

**4.** This Court rarely has had occasion to consider partial release clauses in any context. In addition to Gerber v. Karr, 231 Md. 180, 189 A. 2d 353 (1963), only three of our cases focus on this type of provision, and none of these is of particular relevance to our determination of the issues in this case. In Chesapeake v. Rolling Hills, 248 Md. 449, 453, 237 A. 2d 1, 3 (1968), we construed a clause providing for the release from the lien of a mortgage of property valued at $4,000 (according to a specified plat) for each $1,000 paid against the principal and interest of the mortgage and note, holding that the clear language of the mortgage established that the value of property released should equal four times the sum of principal and interest payments, rather than four times the sum of the principal payments. In Wolf v. Oldenburg, 154 Md. 353, 358, 140 A. 494, 496 (1928), we indicated that the right to release "each acre lot" from the mortgage lien upon a specified payment did not give the right to select a number of small non-contiguous lots and in that manner aggregate one acre. And in Twichell v. Gross, 122 Md. 127, 131-32, 89 A. 385, 386 (1913), we held that, where the mortgage provided for payment in monthly installments and contained a clause providing for release of lots upon payment of specified sums of money, the release clause was separate and distinct from the provision for payment of the debt, and the mortgagor was not entitled to release lots upon payment of a sum which, together with the aggregated monthly payments on the principal, amounted to the sums for which the lots were releasable.

release, in fact, was paid by the time of settlement, and therefore necessarily prior to default on the mortgage obligation. The release clause itself clearly evidences that fact: "[T]he Mortgagor is entitled from and after the date thereof, at its request, *in consideration of the monies paid to the Mortgagee on account of the purchase price, to have released, without further payment,* forty (40) acres of the property secured by this Mortgage . . . ." (Emphasis added.) We realize that some courts have indicated that a payment might not be treated as having been made to procure a release where the demand for release and the payment are not concurrent, *Clason's Point Land Co. v. Schwartz,* 237 App. Div. 741, 262 N.Y.S. 756, 762 (1933), but that principle, even assuming its validity under other circumstances, is clearly inapplicable where, as here, the release clause anticipates that demand will be made at a later date. Therefore, the mortgagor's default in this case did not extinguish its release right inasmuch as full payment was made prior to default, and there is nothing in the instrument indicating that the parties intended the right to be divested upon default or foreclosure.

Since the mortgagee cannot avoid compliance with the terms of the release clause by virtue of the timing of the mortgagor's request, we come to the question whether the provision is sufficiently definite to permit of enforcement. At the risk of being redundant, we refer once again to the language utilized: *"[T]he Mortgagor is entitled* from and after the date hereof, *at its request,* in consideration of the monies paid to the Mortgagee on account of the purchase price, *to have released,* without further payment, *forty (40) acres of the property* secured by this Mortgage . . . ." (Emphasis added.) We conclude, after careful consideration of the particular circumstances of this case, that the parties intended the mortgagor to select the acreage to be released; this being so, the provision, otherwise sufficiently definite in its terms, is not so uncertain as to preclude enforcement by a court of equity.

In discussing the reasons for our conclusion in this case that the instrument is enforceable, we preliminarily set

forth some of this Court's established rules for the construction of mortgages. As Judge Oppenheimer stated for the Court in *Chapman v. Ford*, 246 Md. 42, 51, 227 A. 2d 26, 31 (1967):

> The mortgage is not only a security instrument, it is also a contract between the parties. It is in the province of the court to determine if the agreement is susceptible of a clear and definite understanding and, if so, to state the clear meaning. [When] we find the contract clear . . . , its construction is therefore a matter for judicial interpretation.

Where the language used in a mortgage is clear and unambiguous, we will interpret it according to what reasonable persons in the position of the parties would have thought it meant, *Chesapeake v. Rolling Hills*, 248 Md. 449, 453, 237 A. 2d 1, 3 (1968); *see, e.g., Billmyre v. Sacred Heart Hosp.*, 273 Md. 638, 642, 331 A. 2d 313, 316 (1975) (citing cases); only when there is an ambiguity will we attempt to ascertain the intent of the parties by considering appropriate extrinsic evidence. *See, e.g., Canaras v. Lift Truck Services*, 272 Md. 337, 350, 322 A. 2d 866, 873 (1974) (citing cases). However, if a provision is so vague and indefinite that it is impossible to gather the full intention of the parties, it is void, and the mortgagor at least is entitled to a refund of any payments made pursuant to the void provision. *See Paape v. Grimes*, 256 Md. 490, 497, 260 A. 2d 644, 648 (1970). But courts are reluctant to destroy contracts because of uncertainty, and the agreement will be sustained if the meaning can be ascertained "either from the express terms of the instrument *or by fair implication.*" *Id.* (emphasis in original).

While it is certain that the parties could have been more explicit, we believe the language of the release clause here — viewed in light of the fact that the mortgage was executed for the purpose of facilitating a land development venture to be undertaken exclusively by the mortgagor — clearly and unambiguously entitles the mortgagor to request and have released forty acres of its choice. Under these circumstances,

it is inconceivable to us that, if the mortgagee or some third party was meant to have any control as to which parcel of land was to be selected for release, there would be no additional words intimating that intention. In any event, we would reach the same result even were we to determine that the provision is ambiguous, since the mortgagee virtually concedes that the right of selection rests in the discretion of the mortgagor,[5] and the extrinsic evidence here bolsters this conclusion. The mortgagor planned to develop the 154 acres, together with an adjacent 68-acre tract, as a recreational facility and campground run on a country club-type basis. Memberships were to be sold, entitling purchasers to use the total complex of facilities on an unlimited basis and to share in the profits flowing from rental to the general public of campsites not used by members and from other campground revenues. As for the forty acres to which the mortgagor was entitled, the mortgagee itself explains why conveyance was left to the future: "No property was released at settlement because the location depended on how the entire property was to be developed . . . ." That, in turn, depended on two contingencies — rezoning of the land to permit camping and tenting, and the approval of the State Health Department

---

**5.** As the following statements from its brief indicate, the mortgagee never plainly disputes this aspect of the case:

No attempt was made by Appellant [when it requested release] to specify which 40 acres were to be released.
* * *

The release provision is ambiguous *only* in the description of what particular land is involved . . . . [(Emphasis added.)]
* * *

It is undeniable that until a formal request had been made, specifying which 40 acres were to be released, the entire 154 acres were security for the performance of the terms of the mortgage, and subject to sale at foreclosure.
* * *

Neither the [telegram] nor the letter [requesting the release] specified which 40 acres were to be released.

The mortgagee's only suggestion to the contrary appears in its explanation of its refusal to accede to the mortgagor's request for release, where the mortgagee observes that to have honored the request, which did not specify the forty acres, would have delayed the foreclosure proceedings "until the parties agreed, if they could, on the specific 40 acres to be released."

for a sewer treatment plant and a point of discharge — neither of which ever occurred, though attempts to secure Health Department approval, upon which even partial rezoning was contingent, were still being made by the mortgagor as late as February or March of 1975. Since it was the mortgagor which in all respects was responsible for development of the land, and since the mortgagee indicates that location of the forty acres depended upon how the development proceeded, there is no reasonable conclusion other than that the parties intended the mortgagor to select the forty acres.

While the mortgagee seemingly accepts our construction of the provision, it nonetheless contends that the clause is unenforceable because it does not specifically designate the location of the forty acres. Although we are cognizant of the fact that a court could not grant specific performance of the mortgage release until the mortgagor designates a particular forty acres, we do not agree with the appellee's assertion that the clause is too indefinite to be enforced at some time in the future. This Court recently expressed its views in *Martin v. Michaels*, 259 Md. 346, 349-50, 269 A. 2d 833, 835 (1970), as to the specificity required before a bill for specific performance can be successfully maintained:

> [T]he description [of the land in the contract must] be such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary. Reasonable certainty is all that is required.

It is clear that the provision before us giving the mortgagor the right to select enables the court, with the aid of a sufficient description provided by the mortgagor as to the acreage so selected, to determine with certainty what property the parties intended to cover in the clause — under these circumstances, the tract to be chosen by the mortgagor

*is* the property intended by the parties. *See Lambert v. Jones,* 540 S.W.2d 256, 259 (Tenn. App.), *cert. denied,* Tenn. Sup. Ct. (1976). We conclude that where, as in the present case, the parties evidence an intent that the mortgagor is to select the land, such an agreement will not be unenforceable merely because there is not a metes and bounds description of the portion to be released. It would be wholly unreasonable, and would greatly reduce or destroy the efficacy of partial release clauses, to require such specificity at the time the parties make the mortgage contract. Thus, the appellee's reliance on *Grooms v. Williams,* 227 Md. 165, 175 A. 2d 575 (1961) (a case involving a subordination clause in a contract of sale), for the proposition that the provision is too indefinite, is misplaced, since in *Grooms* it was determined that "[t]here was no agreement that either side could carve out whatever tract they wished whenever they wished. There was, at best, an agreement to agree in the future 'as occasion may arise,' and this is not a sufficient basis for a specifically enforceable contract." *Id.* at 171-72 [578].

Moreover, our perusal of cases of our sister states involving mortgage release provisions claimed to be indefinite indicates that the result we reach is in no way unique.[6] *See, e.g., St. Louis Union Trust Co. v. Chicot County C.-A. Farm Co.,* 127 Ark. 577, 193 S. W. 69, 70 (1917); *Sacramento Suburban Fruit Lands Co. v. Whaley,* 50 Cal. App. 125, 194 P. 1054, 1058 (1920); *Deering Harvester Co. v.*

---

6. We are also aware of analogous lines of cases construing the sufficiency under the Statute of Frauds of designations of land in contracts of sale which give, or are construed to give, the right to select the tract to be conveyed to one of the parties, *see* Annot., 46 A.L.R.2d 894 (1956), and of cases construing the validity of deeds purporting to convey a specified quantity of unlocated land out of a larger tract. *See* Annot., 117 A.L.R. 1071 (1938). Since the cases involving releases of liens are directly on point, however, we need not consider the various other theories that might otherwise be generally relevant to the question of the sufficiency of a land description in a mortgage clause. If we could not conclude, as we do, that the provision here is specifically enforceable, we would then consider whether, by analogy to the aforementioned cases construing the validity of deeds, the mortgagor might appropriately be awarded an undivided interest in the entire tract, *see* Galbraith v. Roddy, 19 Tenn. App. 572, 92 S.W.2d 419, 423 (1934), *cert. denied,* Tenn. Sup. Ct. (1936), or whether the agreement is so indefinite as to render it void, in which case the mortgagor would be entitled to a refund of the $75,000 paid.

*C. L. Smith Farm Land D. Co.*, 146 La. 301, 83 So. 580, 582 (1919); *Welch v. Edisto Realty Co.*, 170 S. C. 31, 169 S. E. 667, 670 (1933); *Lambert v. Jones, supra*, 540 S.W.2d at 258; *Galbraith v. Roddy*, 19 Tenn. App. 572, 92 S.W.2d 419, 423 (1934), *cert. denied*, Tenn. Sup. Ct. (1936); *Williams v. Harris County Houston Ship C. Nav. Dist.*, 128 Tex. 411, 99 S.W.2d 276, 280 (1936) (dictum); *California State Life Ins. Co. v. Elliott*, 193 S. W. 1096, 1099-1100 (Tex.Civ.App. 1917) (concurring opinion).[7] In *Lambert v. Jones, supra*, the most recent decision on this issue, the Court of Appeals of Tennessee considered a clause which, in pertinent part, provided that the mortgagors could "obtain a release or releases from the lien [of tracts of land, required to be of a minimum size and to be contiguous to previously released tracts,] upon payment ... of the sum of $1,500.00 per acre to be released ...." 540 S.W.2d at 257. That court, noting such a clause gave "the mortgagor the right to select which part of the property is to be released ...," *id.* at 258, concluded that it was not so indefinite as to preclude enforcement. The court persuasively reasoned. (*id.* at 259):

> We do not believe that the release agreement before us is so indefinite in description of the land

---

7. We are not unaware of the fact that in another case, McCormick v. Parsons, 195 Mo. 91, 92 S. W. 1162, 1164 (1906), the Supreme Court of Missouri found a release clause void for uncertainty of description where it provided that for every $600 paid, the vendors obligated themselves to release one acre from the lien. However, since we read *McCormick* as standing for the proposition that any release clause not providing a description sufficient to identify the land without resort to extrinsic evidence is too indefinite to enforce, we think that it is contrary to the established law of this State. *See* Martin v. Michaels, 259 Md. 346, 349-50, 269 A. 2d 833, 835 (1970). We also note that many other courts have declined to follow the *McCormick* decision. *See, e.g.,* Sacramento Suburban Fruit Lands Co. v. Whaley, 50 Cal. App. 125, 194 P. 1054, 1058 (1920); Galbraith v. Roddy, 19 Tenn. App. 572, 92 S.W.2d 419, 422-23 (1934), *cert. denied*, Tenn. Sup. Ct. (1936); California State Life Ins. Co. v. Elliott, 193 S. W. 1096, 1099-1100 (Tex.Civ.App. 1917) (concurring opinion).

In addition, we are cognizant of decisions of other courts, not relevant here, where specific performance of release clauses apparently otherwise definite enough to permit of enforcement was refused on the ground that such relief was unconscionable. *See, e.g.,* Lawrence v. Shutt, 269 Cal.App.2d 749, 75 Cal. Rptr. 533, 541 (1969) (provision granting mortgagors unrestricted right to select property, potentially depriving sellers of all choice land and thus leaving them without adequate security, not enforceable); Hall v. Wilson, 277 Ill. App. 601, 604-05 (1934) (mortgagor's request for narrow strip of land embracing entire frontage along highway unconscionable and not enforceable.

to be conveyed (released) that the agreement is unenforceable. If the agreement itself shows that some particular tract was intended, then the release deed is admissible to show the location and boundaries of the tract mentioned. The fact that the tract to be released must be found in the total acreage mortgaged is not of itself a showing that a particular part thereof was intended. But, when the lender agrees that whatever the borrower may choose or intend be released will be released, he also agrees that the lender's intention as to the particular part to be released will be considered the same as that of the borrower and he should not be heard to say otherwise. The tract chosen under those circumstances by the borrower *is* the tract intended. [(Emphasis in original; citation omitted.)]

We note in concluding that the mortgagor, in its brief and at oral argument before this Court, agreed to submit its choice of the forty acres for approval by the trial court. Therefore, to effectuate this restricted right, the order of ratification of the entire 154 acres must be vacated, and on remand, upon submission by the mortgagor of its request, the chancellor should determine whether the selection is equitable under the circumstances of this case. If it concludes that the choice is reasonable, the court should order those forty acres released from the mortgage lien, and thereupon enter an order ratifying sale of the remaining 114 acres to the appellee.[8]

> *Order of the Circuit Court for Worcester County vacated and case remanded to that court for further proceedings in accordance with this opinion.*
>
> *Costs to be paid by appellee.*

---

8. We point out that relief is available in this case even though the mortgagor has not yet selected a particular forty acres since the court obtained jurisdiction over the subject matter of this dispute pursuant to the foreclosure proceedings, and "once an equity court has assumed

jurisdiction, it will retain it to decide all issues ... and award complete relief in order to 'avoid circuity of action.'" Aiello v. Aiello, 268 Md. 513, 518, 302 A. 2d 189, 191 (1973).