(Decided 25th June, 1873.)

---

JOHN MAUS *vs*. WILLIAM A. McKELLIP and CHARLES T. REIFSNIDER, Assignees in Bankruptcy of JACOB ERB.

*Sale of Mortgaged property—Fee paid to Counsel by Mortgagee, not allowed out of the Proceeds of the Sale of the Mortgaged property—Commissions paid solicitor for collecting Mortgage debt, allowed—Act of 1825, ch. 50—Art. 64, sec. 2, of the Code.*

A mortgagor in his deed covenanted to pay not only the mortgage debt, but also the costs of drafting and recording the mortgage, and *all counsel fees and costs which the mortgagee might incur in collecting the mortgage debt*, or in releasing the mortgage. Upon a bill filed by the mortgagee to foreclose the mortgage, default having been made by the mortgagor, a decree was passed for the sale of the mortgaged premises, and a trustee appointed to make the sale. Subsequently the mortgagor applied for the benefit of the Bankrupt Act, and his assignees applied to the United States District Court in Bankruptcy, to enjoin the mortgagee and the trustee from selling the mortgaged property. The mortgagee employed counsel to resist this application, and paid him a fee of $200 for such service. The mortgaged property was sold by the trustee; and upon the distribution of the proceeds of sale in the Circuit Court, the aforegoing fee together with the commissions paid by the mortgagee to his solicitor, who was the trustee, for collecting the mortgage debt, were allowed in the audit. Upon exceptions by the assignees in bankruptcy, these claims were disallowed by the Circuit Court. Upon appeal by the mortgagee, it was HELD:

Maus *vs.* McKellip & Reifsnider, Assignees.

1st. That he was not entitled to an allowance for the fee paid by him to counsel for resisting the application of the assignees in bankruptcy, it not being such an expense as, within the terms of the mortgage, was necessarily incurred in the collection of the mortgage debt.

2nd. That he should have been allowed the commissions paid to his solicitor, it being an expense, within the terms of the mortgage, incurred in collecting the mortgage debt, and incurred through the default of the mortgagor in paying the same according to his covenant.

There is nothing either in the letter or spirit of the Act of 1825, ch 50, embodied in section 2, of Article 64, of the Code, to prevent a mortgagor from covenanting to pay in addition to the mortgage debt, such costs and charges as the mortgagee may be obliged to incur in the collection of such debt.

APPEAL from the Circuit Court for Carroll County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and ROBINSON, J.

*William M. Merrick,* for the appellant.

The single question presented for the determination of the Court in this case, is whether, under the terms of the mortgage, when granted, the counsel fees and costs to which the mortgagee was put by the acts of the mortgagor, and those claiming under him, in vindicating his rights and securing and collecting the mortgage debt, were properly covered by the lien of the mortgage, or whether by force of the second section of Article 64 of the Code, the said counsel fees and costs are excluded from the benefit of the lien? By the just construction of said section, the said allowances being necessary and proper incidents to the mortgage debt, are properly covered by the terms of the mortgage and should have been allowed by the Court. These expenses, which are disallowed, are expenses forced upon the mortgagee by the acts of the bankrupt himself

and his creditors, through their representatives, the assignees in bankruptcy, and if thereby the fund out of which they are to be paid is diminished, the diminution is occasioned by their own hostile acts, and not by the volition of the mortgagee, and they have none but themselves to blame for that reduction of the fund. They could see precisely from the mortgage all the liabilities of the property, and they have not been deceived, nor has their security been lessened or impaired by any secret act of the mortgagee over which they had no control. The policy of the law, therefore, is not violated by the allowance of the claims, but justice is promoted. *Vide* 2 *Danl. Ch. Prac.*, 1467, 1468, (*Ed. of* 1865.) ; *Lomax vs. Hide,* 2 *Vernon,* 185 ; *Ramsden vs. Langley*, 2 *Vernon,* 536, (*marg.*) ; *Ellison vs. Wright,* 3 *Russell,* 458 ; *Hunt vs. Fownes,* 9 *Vesey,* 70 ; *Alexander's Ch. Prac.,* 148 ; *Nelson vs. Everett,* 29 *Iowa,* 184 ; *Williams vs. Meeker,* 29 *Iowa,* 294 ; *Hurd vs. Coleman,* 42 *Maine,* 191 ; *Bronson vs. La Crosse Railroad Co.,* 2 *Wallace,* 312 ; *Pierce vs. Kneeland, et al.,* 16 *Wisconsin,* 678 ; *Hitchcock vs. Merrick,* 15 *Wisconsin,* 528.

*E. F. Crout and John E. Smith,* for the appellees.

A decree was passed by the Circuit Court for Carroll County, for a sale of the mortgaged premises for cash. Afterwards the mortgagor, applied for the benefit of the Bankrupt Act, and assignees were elected, confirmed and qualified. As representatives specially of the unsecured creditors, they applied to the United States District Court, in bankruptcy, to enjoin the appellant and the trustee, his solicitor, from selling, on the ground that a sale for cash would not realize more money than sufficient to pay the mortgaged debt, interest and costs, leaving the unsecured creditors entirely unpaid, whilst a sale on terms such as the said assignees would be authorized to make, would be greatly beneficial to the unsecured creditors.

Pending proceedings in the Bankrupt Court, the appellant and his solicitor, the trustee to sell, agreed to change the terms from cash to credit, and the purpose of the assignees was accomplished, and the result of the sale vindicated their judgment and the propriety of their action in the premises. By their proceedings, instituted in no possible hostility to the appellant, his claim which, by the proof in the Bankrupt Court, was in danger under a cash sale, has been fully secured, and the rights of all other creditors protected. The expenses and costs sought to be recovered and taken from the general creditors of the bankrupt, were not incurred in any vindication of the rights of the appellant; on the contrary, the policy which he was forced to adopt, resulted in the perfect securing of his debt, and was the means to the end. No position of hostility or antagonism was ever occupied by the assignees in bankruptcy towards him, but a purpose and desire on their part to increase the fund, of necessity benefitted and advantaged him. Whatever the decision of the Bankrupt Court, he could not have been injured. If, therefore, without necessity, but from any personal motive or object, he being secure in any event, chose to employ counsel to make a contest, in the result of which he was not interested, it would be inequitable that the services of such counsel should be paid for out of funds justly dedicated to creditors whose only means of redress were availed of by the assignees representing them. The commissions allowed to the trustee in the audit, on the proceeds of sale, the solicitor employed by the appellant to collect his debts, are a fair and reasonable compensation for his services, and no other were ever contemplated or intended by the terms of the mortgage. They are the necessary expenses, are the only incidents that can be attached to the principal sum and debt.

ROBINSON, J., delivered the opinion of the Court.

In a mortgage executed by Jacob Erb and wife, to secure the payment of seven thousand dollars, the mortgagor, Jacob, covenanted not only to pay the mortgage debt on a day therein named, but also the costs of drafting and recording the mortgage and "*all counsel fees and costs that the said John Maus may be put unto in collecting the debt aforesaid, or in releasing this mortgage.*"

Upon a bill filed in the Circuit Court for Carroll County, by the said Maus, mortgagee, to foreclose the mortgage, a decree was passed and a trustee appointed to sell the mortgaged premises.

Afterwards, Erb, the mortgagor, applied for the benefit of the Bankrupt Act, and his assignees applied to the District Court of the United States in Bankruptcy to enjoin the appellant and the trustee appointed under the decree of the Circuit Court for Carroll County, from selling the mortgaged property. The appellant employed additional counsel to resist this application on the part of the assignees in bankruptcy, and for the professional services thus rendered was obliged to pay the sum of two hundred dollars. The mortgaged property was sold by the trustee under the decree of the Circuit Court for Carroll County, and upon the distribution of the proceeds of sale in that Court, the above fee of two hundred dollars, together with the sum of $457.47, being five per cent. commissions paid by the mortgagee to his solicitor for collecting the mortgage debt, were allowed in the audit. Upon exceptions filed by the assignees in bankruptcy, these claims were disallowed by the Court below, from which ruling and the final order directing distribution of the amounts thus allowed to the assignees in bankruptcy, this appeal was taken. The question, then, is whether the mortgagee, now appellant, is entitled to an allowance of these claims under the mortgage.

In support of the ruling below, the appellees contend, 1st, That the claims thus disallowed are not within the

terms of the mortgage; and, 2ndly, that if within the
terms, they are excluded by section 2, of Article 64 of
the Code. This section, which is a codification of the
Act of 1825, chap. 50, provides that,

"No mortgage or deed in the nature of a mortgage,
shall be a lien or charge, on any estate or property for
any other or different principal sum or sums of money
than the principal sum or sums that shall appear on the
face of such mortgage, and be specified and recited
therein, and particularly mentioned and expressed to be
secured thereby at the time of executing the same; this
not to apply to mortgages to indemnify the mortgagee
against loss from being endorser or security."

In the matter of the estate of *Notley Young*, 3 *Md. Ch.
Dec.*, 461, the late Chancellor held, that under the Act of
1825, no allowance could be made for charges and com-
missions, although the deed or assignment in that case
provided for the payment of the same. The decision of
the late Chancellor is justly entitled to great weight, but
in regard to the Act of 1825, after a careful examination
of the same, we are obliged to differ with him in the con-
struction thus placed upon it. In *Cole, trustee, vs. Albert
& Runge*, 1 *Gill*, 423, the construction and purposes for
which the Act of 1825 was passed, were fully considered
by this Court. In that case the mortgage was to secure
the mortgagees to the extent of $10,000. It appeared in
evidence, that, at the time of its execution, a much less
sum was due from the mortgagor, but that the mortgagees
were responsible for other sums on account of the mort-
gagor, and that it was the intention of the mortgagor, as
shown upon the face of the mortgage, to protect them to
the amount of the $10,000, mentioned as the consider-
ation. The Court held the mortgage was a valid security
to the amount of $10,000, because that sum being men-
tioned in it, no one could be deceived or prejudiced.
"The design of the law-makers," says Judge ARCHER,

"in the passage of the Act of 1825, chap. 50, was to prevent liens on property to the prejudice of creditors, for amounts and claims never contemplated by the parties at the time of its execution, and of which the deed by its terms gave no notice: as if a deed were executed to cover a mortgagee against all future liabilities of any and every description, which the mortgagor might incur or be responsible for to the mortgagee. * * * * * A practice prevailed anterior to the Act of 1825, ch. 50, of taking mortgages for specified sums of money, greatly below the value of the mortgaged premises, with a clause or clauses providing that the mortgaged premises should be held as a security for all future liabilities or advances by the mortgagee to the mortgagor, by which means the creditors of the mortgagor were defrauded, sometimes by fraudulent combinations between the mortgagor and mortgagee, or by the acts of the mortgagee alone, who, after the known insolvency of the mortgagor, purchased up liabilities of the mortgagor at depreciated rates, and held them as liens on the mortgaged premises for their nominal amounts; * * * * * * such transactions the law was designed to meet." We have thus quoted at length the opinion of the Court, because in it the construction and purposes of the Act of 1825 are fully considered.

It will thus be seen that although the Act of 1825, codified in Art. 64 of the Code, was directed against any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of the mortgage, that is, against new loans or debts, not contemplated by the parties at the time of the execution of the mortgage, but contracted subsequently and attached to the original debt by a new and springing contract between the parties, yet there is nothing in the terms of the Act, either in its letter or spirit preventing a mortgagor from covenanting to pay in addition to the debt such costs and charges as the mortgagee may be obliged to incur in the collection of the same.

If so, the question then is whether the claims disallowed by the Court are within the terms of this mortgage, which provides that the mortgagee shall be paid all counsel fees and costs incurred in the *collection of the debt.*

The claim of $200 paid counsel for resisting the application of the assignees in bankruptcy was, in our opinion, properly disallowed. It was not an expense necessarily incurred in the collection of the mortgage debt. Whether the sale was made by the assignees in bankruptcy or by the trustee in chancery, in no manner affected the lien of the mortgagee, or his preference to the proceeds of sale. The fact that he preferred a sale by the trustee and employed counsel with that view, is no reason why the unsecured creditors of the mortgagor should pay the expenses which he may thereby have incurred, or that it should come out of a fund properly belonging to them. There is nothing in the record to show that the proceedings by the assignees were instituted in a spirit of hostility to the mortgagee, and in the absence of such proof, they must be presumed to have acted in good faith and for the benefit of creditors.

It is true, Courts of Equity, in the absence of an express contract, may allow a mortgagee for costs and expenses necessarily incurred in defending his title against the mortgagor and parties claiming under him. 2 *Daniel's Chan. Prac.*, 1467–8 ; *Lomax vs. Hide*, 2 *Vernon*, 185 ; *Hunt vs. Fownes*, 9 *Vesey*, 70. The fee of $200, however, was not paid in defending the title of the mortgagee, and does not come within the cases relied on by the appellant.

As to the claim of $457.47, being five per cent. commissions paid to the attorney for collecting the mortgage debt, we are of opinion that it comes within the terms of the mortgage. It was an expense incurred in the collection of the mortgage debt, and incurred too, by the default

of the mortgagor in not paying the same within the time prescribed by the mortgage.

The order of the Court will be affirmed in part and reversed in part, and the case remanded, in order that a new audit may be stated in conformity with the opinion of this Court.

> *Order affirmed in part, and*
> *reversed in part, and*
> *case remanded.*

(Decided 25th June, 1873.)