SCHNEIDER *v.* SCARBOROUGH
In Re: J. FRANCIS TRUITT, INC.

[No. 1, October Term, 1951.]

*Decided October 31, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Louis S. Ashman,* with whom were *Ashman & Link* on the brief, for appellant.

No brief and no appearance for appellee.

GRASON, J., delivered the opinion of the Court.

This case presents to this court for review the correctness of an order overruling exceptions to the ratification

of an auditor's report. The facts of the case are as follows:

Henry L. Schneider (appellant) assigned to J. Gifford Scarborough, an attorney at law (appellee) a mortgage which he held on certain property situate in Cecil County, for the purpose of foreclosure. Schneider owned the property and deeded the same to J. Francis Truitt, Inc., a Maryland corporation, and at the same time, and as a part of the transaction, the corporation executed to Schneider a purchase money mortgage in the amount of $45,000.00. The mortgage is dated October 20, 1947, covers two parcels of land of about three acres, improved by tourist cabins, and includes the personal property on the premises. Default having occurred under the terms of the mortgage, appellant assigned the mortgage to appellee by long assignment for purpose of foreclosure. This assignment is dated the 2nd day of May, 1950. It refers to the mortgage to appellant from J. Francis Truitt, Inc., the amount thereof, the rate of interest, and the mortgage records of Cecil County where the mortgage is recorded. It also contains the following clause: "WHEREAS, it is the intention of the said Henry L. Schneider to assign said mortgage for purposes of collection and/or foreclosure to J. Gifford Scarborough, Attorney-at-Law." It further provides: "'* * * the said Henry L. Schneider does assign to the said J. Gifford Scarborough the within mortgage for the purpose of collection and/or foreclosure, which mortgage covers the following described property, * * *'" It then describes, by metes and bounds, parcel No. 1 and parcel No. 2 of the land covered by the mortgage.

Appellee instituted foreclosure proceedings and advertised in two newspapers published at Elkton that he would "sell at public sale at the Court House Door, in the Town of Elkton, * * * on Monday, June 5th, 1950, at 11:00 A.M., all right, title and interest of the said Mortgagor, to the following described parcels of land", (and then set out by metes and bounds, courses and distances, parcels No. 1 and No. 2 contained in said mort-

gage); The advertisements further contained: "Being the same two parcels of land which were conveyed unto J. Francis Truitt, Inc. by Henry L. Schneider by deed dated October 20, 1947, and recorded among the said Land Records in Liber R. R. C. No. 27, Folio 426. Together with the improvements thereon erected and all the rights, privileges, and appurtenances thereunto belonging or in anywise appertaining, *including the personal property and equipment located on the premises.*" (Italics supplied.)

The property was sold, as per advertisements, to Henry L. Schneider for $38,000.00. The appellee reported the sale on June 15, 1950. In the Report of Sale the appellee states that he sold, as per advertisements: "the said real estate mentioned in said Mortgage", and specifically mentions the two parcels of land contained in the mortgage, "to the said Henry L. Schneider, through his agent, Lewis A. Seth, he being then and there the highest bidder therefor at and for the sum of Thirty-eight Thousand ($38,000.00) Dollars". This sale was duly reported by the assignee and finally ratified and confirmed on the 21st day of August, 1950, and has long since become enrolled. Solicitor for appellant, in his argument before this court, stated that his client was perfectly satisfied with the sale; and the mortgagor, Truitt, Inc., agreed not to bring any action to set aside the sale. Nevertheless, appellant contends that the personal property did not pass under this sale. With this contention we do not agree. The assignment to appellee covered the whole mortgage, and thus included the personal property. There can be no doubt that the appellant intended, by his assignment to the appellee, to convey all property covered by the mortgage, real and personal. We take it that the advertisement was read before the property was auctioned at the sale, and the appellant must have heard it read. He knew then, by the terms of the advertisement, that both the real and personal property were being sold at the auction. The testimony shows that appellant had discussed the matter thoroughly with

the appellee and with his real estate agent, Mr. Seth. He was foreclosing a mortgage through his assignee, and he purchased the mortgaged property through his real estate agent at the sale.

There being no exceptions to the sale, no one is involved here but the appellant, who was, for all practical purposes, the seller and purchaser. He knew exactly what the property consisted of, both real and personal. All of the property covered by the mortgage, therefore, passed to him as purchaser. Furthermore, the appellee testified that he sold both the real and personal property to the appellant.

On December 2, 1950, the appellant filed exceptions to the auditor's report, in which he alleges: 1. That he employed appellee to foreclose the said mortgage and agreed to pay him therefor a reasonable fee. 2. That appellee did not distribute to him the money shown in the auditor's report, to wit, the net proceeds of sale, and that he paid the commission of $1,565.00 allowed the assignee for making the sale, under protest, in order to obtain the deed to the property in question.

It seems that the appellant was desirous of repossessing title to the property he sold to J. Francis Truitt, Inc. He was a friend of Lewis A. Seth, a real estate operator who was interested in the sale of this property. Seth suggested that appellant foreclose his mortgage and that he employ Mr. Scarborough to do the work. Appellant stated that Seth said that Scarborough was a new member of the bar and he was interested in practice and not profits. Appellant also stated that Seth told him that the usual commission would be about $3,600.00 and that he could get Scarborough to do it for a couple of hundred dollars, and he said he told Seth if Scarborough would do it for a couple of hundred dollars to tell him to go ahead and take the case. Appellant, who is blind, further testified that after the sale his niece, Mrs. Murray, led him to the office of Mr. Scarborough for the purpose of paying some of the costs of the sale, and that the costs necessary to be paid at

that time amounted to $294.60 and he made the check out for $394.60. "There was no mention made of the fee at that time other than I told him I would pay half his fee now and the other half when I paid the balance of the expense". A check dated June 30, 1950, to J. Gifford Scarborough, for $394.60, signed by Henry L. Schneider, endorsed "J. Gifford Scarborough", was offered in evidence. This evidence was confirmed by Mrs. Murray. The appellant never said anything to Scarborough about Scarborough's commission until after the sale.

Mrs. Scarborough, the wife of appellee, who acted as his stenographer, said she was present when the check referred to was signed, and that a young boy brought appellant to the office that day. She testified that appellant told her husband "to make out a check for a certain amount of money and '$100.00 of it is to be for you', * * * 'That leaves me owing you $900.00', and Gifford said, 'No. It's more than that, Henry.' " Then she testified: "he (appellant) waited a few minutes and said, 'I should have had an understanding before I started', and then he and the young boy up and went out."

Seth testified that he suggested Scarborough to appellant and told him that Scarborough was a young man just entering the bar and he might get something done for him in regards to the fee, but there was nothing definite between Seth and Scarborough—the conversation was with Schneider; that he never heard of a $200.00 fee until the trial of the case.

The appellee testified that he did not agree with the appellant to charge $200.00 for his services and that when he did outline the commission the appellant offered to pay $1,000.00, which he refused.

The evidence discloses that Seth and the appellant were in communication for sometime to procure a purchaser for the property in question. Seth thought he had a purchaser at a price that was attractive to the appellant, and appellant therefore wanted to foreclose his mortgage on the property, thus regaining title to the same and take advantage of a purchaser that he

thought Seth could procure, who would pay an attractive price for the property. The property was foreclosed by the appellee, and appellant bought the same at the mortgage sale. Appellant objects to paying the usual commission. *McCullough v. Pierce,* 55 Md. 540. He is perfectly satisfied with the way in which this sale was conducted, and the only thing he is dissatisfied with is the payment of the commission. We think that the cases cited by appellant present facts entirely different from the case at bar. Where the assignee of a mortgage has performed his work he is entitled to the commission stipulated to be paid in the mortgage, unless it is clearly proved there was a contract to the contrary. No question of confidential relations arises here. The sole questions are, did the assignee properly conduct his duties as such, and do the commissions stipulated in the mortgage govern. The sale made was thoroughly satisfactory to the appellant. He said he should not pay the usual commission because the long assignment does not specifically cover personal property, but there is no question that the mortgage itself was assigned, which in turn comprised all personalty, and the advertisement included the personalty. The omission to include specifically the personalty in the report of sale was a mere oversight and can be amended.

It is urged that the appellee so far omitted to perform his duties as assignee of this mortgage that he should not be allowed any commission. With this we do not agree, and neither can we say, from the evidence in this case, that there was a contract entered into between the appellant and the appellee to foreclose the mortgage for a fee of about $200.00. The chancellor below did not think so, and he saw and heard the witnesses in this case, and we cannot say that his conclusion is clearly wrong.

There is nothing in the contention that because the purchase money wasn't actually turned over to the appellant by the appellee that the appellee is not entitled to commissions.

*Order affirmed, with costs.*