910 A.2d 1089

Martin **BALTROTSKY**

v.

Mark W. **KUGLER, Trustee.**

**No. 18, Sept. Term, 2006.**

Court of Appeals of Maryland.

Nov. 13, 2006.

Joel D. Joseph (Law Offices of Joel D. Joseph, on brief), Bethesda, for petitioner.

Lawrence P. Fletcher-Hill (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

We issued a writ of certiorari, 393 Md. 242, 900 A.2d 749 (2006), to review an unreported opinion of the Court of Special Appeals which considered the propriety of certain practices attendant to a trustee's foreclosure sale of properties held under a deed of trust. In this case, Petitioner, Martin Baltrotsky, contends that the Circuit Court for Montgomery County's abatement of interest on the purchase prices from the foreclosure sale of his properties should be declared void as contravening the terms of the sale notice. Petitioner also posits that the five percent trustee's commission provided for by the deed of trust between Petitioner and his lender amounts to an illegal penalty or, alternatively, an unenforceable liquidated damages clause. Respondent, Mark Kugler, the trustee under the deed of trust, asserts that Petitioner's

appeal was moot as to the abatement of interest regarding two of the three secured properties and, further, that as to all of the properties, the abatement of interest by the Circuit Court was not an abuse of discretion. Respondent also defends his commission as a legally enforceable term of the contract between Petitioner and his lender.

## I. FACTS

This case presents a combination of undisputed facts flowing from a tumultuous procedural history. Baltrotsky owned three properties, improved by single-family residences, and located in Montgomery County, respectively, at 1801 Arcola Avenue, 5100 Bradley Boulevard, and 9110 Georgia Avenue. All three properties were subject to a single deed of trust held by the lender and beneficiary of the trust, KH Lending Company. On 8 December 2003, the Respondent trustee commenced an action in the Circuit Court for Montgomery County to foreclose on the deed of trust. The sum overdue and unpaid amounted to $864,170.27. The foreclosure sale was held on 24 December 2003, garnering successful bids totaling $1,261,000.00. The Report of Sale filed by Respondent on 16 January 2004 indicated that each of the properties sold to third-party purchasers: the Arcola Avenue property to Segal General Partnership for $296,000.00; the Bradley Boulevard property to FRS, LLC for $550,000.00; and the Georgia Avenue property to Dennis J. Dyer for $415,000.00.

The procedural morass arose following the foreclosure sale when Petitioner instituted *pro se* litigation in an effort to void the sale and preserve his ownership of the properties. Over the span of approximately 11 months (from 29 December 2003 to 6 December 2004), Petitioner filed myriad motions and *lis pendens* actions,[1] mostly arguing that Petitioner's collateral

---

1. Petitioner filed at least 24 separate papers during the time he represented himself in the instant matter. His filings included: on 29 December 2003, a Suggestion of Bankruptcy; on 3 February 2004, a Complaint to Void the Foreclosure; on 19 February 2004, an Amendment to the Complaint to Void the Foreclosure; on 26 February 2004, a

pending bankruptcy filing (*In Re Baltrotsky*, 2004 WL 2937537 (D.Md.2004)) should stay the foreclosure proceedings. Respondent advised the Circuit Court on a variety of occasions, supported by documentary evidence, that the automatic stay on non-bankruptcy proceedings pursuant to 11 U.S.C. § 362(c) had been terminated in Baltrotsky's case by order of the United States Bankruptcy Court for the District of Maryland, Greenbelt Division. Thus, despite Petitioner's efforts, the Circuit Court declined to stay the foreclosure and ratified the sale on 14 June 2004. Nonetheless, Petitioner persisted in his disputatious attempts to forestall the loss of his properties. *See supra* footnote 1. Among these efforts was Petitioner's appeal of the sale's ratification to the Court of Special Appeals. That appeal was dismissed due to the Petitioner's failure to file timely an information report required by Maryland Rule 8–205.

---

Notice of *Lis Pendens;* on 1 March 2004, a Second Notice of Bankruptcy; on 25 March 2004, a Line Advising Court that he has Filed a Second Amendment Complaint to Void Foreclosure and Post Petition Transfer in the United States Bankruptcy Court; 5 April 2004, a Motion for Hearing and Notice Why Foreclosure Not Ratifiable on; 5 April 2004, a *Lis Pendens* Action on; on 27 April 2004, a Reply Supporting Stay or Hearing; on 14 June 2004, a Request for Continuance; on 23 June 2004, Motion for Reconsideration of Hearing [Ratifying Foreclosure Sale] Held on June 14, 2004 at 10am; on 23 June 2004, an Objection to Foreclosure Purchasers Motion for Writ of Possession of 9110 Georgia Avenue; on 25 June 2004, a Motion Requesting Stay of Foreclosure Action; on 22 July 2004, a Motion to Stay Foreclosure Action Pending Outcome of Bankruptcy Appeal; on September 29, 2004; on 4 October 2004, a Motion to Set Aside Judge Thompson's Order and Stay Foreclosure Action; on 8 November 2004, a Motion in Opposition to Segal General Partnership's Motion for Abatement of Interest; on 24 November 2004, an Emergency Motion Requesting Preliminary Relief from Eviction; on 30 November 2004, a *Lis Pendens* Action Regarding Real Property That is 5100 Bradley Boulevard Located in Chevy Chase, Maryland 20815; on 3 December 2004, a *Lis Pendens* Action Regarding Real Property That is 9110 Georgia Avenue Located in Silver Spring, Maryland 20910; on 3 December 2004, a *Lis Pendens* Action Regarding Real Property That is 1801 Arcola Avenue Located in Silver Spring, Maryland 20902; and on 6 December 2004, an Emergency Motion to Allow a Continuance for Hearing Scheduled at 10am, December 9, 2004 Due to the Physical and Emotional Condition of Martin Baltrotsky, Defendant, Mr. Baltrotsky Is Currently Under Physician Care.

The foreclosure purchasers each moved in the Circuit Court for abatement of interest from the date of sale to the date of final settlement, citing as justification Petitioner's filings and the resultant delays and clouds imposed on the properties' titles. On 29 September 2004 the Court granted abatement of interest with respect to the Bradley Boulevard and Georgia Avenue properties and extended the time for final settlement on them to 16 October 2004. Interest was abated as requested for the Arcola Avenue property on 14 February 2005 after the need for its resale was averted by an eleventh-hour settlement. After settlement was achieved on all of the properties, Respondent submitted to the auditor his proposed distribution of proceeds. Included in the ratified Auditor's Report was Respondent's trustee commission of five percent of the gross foreclosure sale, equaling $63,050.00. Respondent distributed in February 2005 all but $30,119.50 of the sale proceeds, an amount equal to the interest abated on the Arcola Avenue property sale.

Petitioner appealed to the Court of Special Appeals, which affirmed, in an unreported opinion, the judgment of the Circuit Court. We granted Baltrotsky's petition for writ of certiorari perhaps to consider the following questions:[2]

(1) Whether Petitioner's appeal as to the abatement of interest on the foreclosure sale of the Bradley Boulevard and Georgia Avenue properties, the proceeds of which

---

**2.** In the interest of clarity, we rephrased the questions submitted by the Petitioner, and added one threshold question not presented, in his Petition for Certiorari. The Petitioner's original questions were as follows:

(1) When the notice of a foreclosure sale expressly provides that "Interest to be paid on the unpaid purchase money by the purchaser(s) at the rate of 13.5% per annum from the date of sale," without exception, does a court order approving the abatement of interest violate Maryland law, the Maryland Constitution or the Constitution of the United States?

(2) Does a five percent commission in a deed of trust constitute a penalty or liquidated damages in violation of this court's ruling in *United Cable Television of Baltimore v. Burch,* 354 Md. 658, 732 A.2d 887 (1999)?

have been distributed by the trustee, is rendered moot where Petitioner did not post a *supersedeas* bond;

(2) Whether the Circuit Court abused its discretion in abating the interest from the time of sale until the time final settlement was achieved; and

(3) Whether the trustee's five percent commission, as provided for in the deed of trust, constitutes a penalty or unenforceable liquidated damages clause under the circumstances?

Because our answer to the first question is in the affirmative and the second and third questions in the negative, we affirm the judgment of the Court of Special Appeals.

## II. ANALYSIS

### A. Mootness of Appeal in the Absence of a *Supersedeas* Bond

Maryland decisional law speaks clearly on the question of the mootness of appellate challenges to ratified foreclosure sales in the absence of a *supersedeas* bond to stay the judgment of a trial court. The general rule is that " 'the rights of a *bona fide* purchaser of mortgaged property would not be affected by a reversal of the order of ratification in the absence of a bond having been filed.' " *Pizza v. Walter,* 345 Md. 664, 674, 694 A.2d 93, 97 (1997) (quoting *Lowe v. Lowe,* 219 Md. 365, 368, 149 A.2d 382, 384 (1959)), *mandate withdrawn,* 346 Md. 315, 697 A.2d 82 (withdrawing by joint motion pursuant to settlement agreement); *see also Leisure Campground & Country Club Ltd. P'ship v. Leisure Estates,* 280 Md. 220, 223, 372 A.2d 595, 598 (1977). As a consequence, "an appeal becomes moot if the property is sold to a bona fide purchaser in the absence of a supersedeas bond because a reversal on appeal would have no effect." *Pizza,* 345 Md. at 674, 694 A.2d at 97 (citing *Lowe,* 219 Md. at 369, 149 A.2d at 385); *see also Parker v. Columbia Bank,* 91 Md.App. 346, 374–75, 604 A.2d 521, 535 (1992); *Onderdonk v. Onderdonk,* 21 Md.App. 621, 624, 320 A.2d 585, 586 (1974). A *bona fide* purchaser, in the case of a foreclosure sale, is a purchaser who

takes the property without notice of defects in the foreclosure sale. *Pizza*, 345 Md. at 674, 694 A.2d at 97–98.

█ Our precedent has developed two exceptions to this general rule: (1) the occasion of unfairness or collusion between the purchaser and the trustee, *Pizza*, 345 Md. at 674, 694 A.2d at 98 (citing *Sawyer v. Novak*, 206 Md. 80, 88, 110 A.2d 517, 521 (1955)) and (2) when a mortgagee purchases the disputed property at the foreclosure sale. *Id.* (citing *Leisure Campground*, 280 Md. at 223, 372 A.2d at 598). There is no contention by the parties, nor have we found anything in the record to suggest, that the third-party purchasers of the foreclosed properties were not *bona fide* purchasers. Further, neither did the third-party purchasers act in collusion with the trustee,[3] nor were they the mortgagees of the properties. Accordingly, the third-party purchasers are embraced within the general rule protecting their purchases from the possible fallout of an appeal by Petitioner, in the absence of the posting of a *supersedeas* bond by Petitioner.

█ The rationale for the general rule is borne out in this case. As this Court stated in *Leisure Campground*, this decisional rule is intended to encourage nonparty individuals to bid on foreclosure sale properties. 280 Md. at 223, 372 A.2d at 598. Bidders justifiably would be reluctant to purchase a foreclosure property without assurance in the form of some security that their investments will be protected from subsequent litigation by recalcitrant mortgagors seeking to retain their property. The Court of Special Appeals's opinion in *Creative Development Corporation v. Bond*, 34 Md.App. 279, 367 A.2d 566 (1976), *cert. denied*, 279 Md. 682 (1977), makes the point that lenders also would be harmed without the rule in place. In *Creative*, the grantor of a deed of trust attempted to evade the *supersedeas* bond requirement for an appeal by

---

**3.** In fact, the trustee, acting pursuant to his duty to produce in a timely manner the highest price possible for the property, filed a Motion for Resale of Property at Sole Risk and Expense of Defaulting Purchasers when the third-party purchasers failed promptly to close on the properties.

filing a *lis pendens* action to stay the foreclosure of its property. 34 Md.App. at 283, 367 A.2d at 568. The intermediate appellate court condemned this tactic as an unfair shifting of expenses to the lender, who had succeeded in foreclosure, but yet could not enjoy its success until the new action was fully litigated, all the while bearing the lost interest income. *Creative,* 34 Md.App. at 283, 367 A.2d at 568–69. A mortgagor must post a bond upon appeal from the Circuit Court's judgment. Md. Rules 8–422, 423. In the present case, the mortgagor failed to obtain a bond to secure his appeal to the Court of Special Appeals. Thus, the appeal as to two properties, and his other litigious attempts to rescue all three properties from foreclosure, could not be considered properly. His efforts succeeded only in delaying final settlement and potentially causing larger interest obligations to accrue for the *bona fide* purchasers of the properties. The law is clear that Petitioner may not litigate the validity of the foreclosure at the expense of others; the posting of security is required on his part to protect the purchasers and lender alike.

As the Court of Special Appeals recently pointed out in *Weston Builders and Developers, Inc. v. McBerry, LLC,* 167 Md.App. 24, 44, 891 A.2d 430, 441–42 (2006), the *supersedeas* bond is not the only means by which the stay of enforcement of a judgment may be achieved.[4] Aside from the bond, Maryland Rule 8–422(a) identifies two additional methods of accomplishing a stay, provided that the proceeding does not involve an appeal of an interlocutory order or an injunction

---

**4.** The intermediate appellate court did note, however, that the *supersedeas* bond is a "frequent precondition for obtaining a stay." *Weston Builders & Developers, Inc. v. McBerry, LLC,* 167 Md.App. 24, 44, 891 A.2d 430, 441 (2006); *accord Darby v. Balt. & Ohio R.R. Co.,* 259 Md. 493, 496, 270 A.2d 652, 654 (1970) (construing former Rule 817(a)); *Ed Jacobsen, Jr., Inc. v. Barrick,* 252 Md. 507, 512, 250 A.2d 646, 648–49 (1969) (same); *Basiliko v. Welsh,* 219 Md. 602, 604, 150 A.2d 220, 220 (1959) (same); *Weiprecht v. Gill,* 191 Md. 478, 486, 62 A.2d 253, 256 (1948); *Billingsley v. Lawson,* 43 Md.App. 713, 406 A.2d 946 (1979), *cert. denied,* 286 Md. 743, *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

pending an appeal. A party may file an "alternative security as prescribed by Rule 1–402(e),[5] or other security as provided in Rule 8–424.[6]" Rule 8–422(a). Because Petitioner posted neither a *supersedeas* bond nor an alternative security under Rule 1–402(e), nor was he an insured plaintiff under Rule 8–424, there is no basis upon which Petitioner may maintain his appeal after the proceeds of the sale have been distributed. Thus, Petitioner's appeal regarding the Bradley Boulevard and Georgia Avenue properties is moot. We are left to consider then the question of the abatement of interest on the Arcola Avenue property because the trustee retained from the proceeds an amount equal to the abated interest attributable to the sales price of that property. Before we proceed, however, we note our disagreement with Petitioner's contention that a controversy may not be "partially moot." In *Billingsley v. Lawson,* the Court of Special Appeals found that a mortgagor's failure to post a *supersedeas* bond rendered moot that portion of the mortgagor's challenge to a foreclosure sale ratification. 43 Md.App. 713, 727, 406 A.2d 946, 955 (1979), *cert. denied,* 286 Md. 743, *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). We see no appreciable difference between that point of law applied in *Billingsley* and the present case.

### B. Discretion of Circuit Court to Abate Interest

Whether it is properly within a Circuit Court's discretion to abate interest accruing between the foreclosure sale and the closing was addressed by this Court in *Donald v. Chaney,* 302 Md. 465, 488 A.2d 971 (1985).[7] In *Donald* we recognized three circumstances in which abatement may be permitted:

---

**5.** Rule 1–402(e) provides for the substitution of some security for the performance of a bond in lieu of a surety.

**6.** Rule 8–424 concerns money judgments entered against an insured where the insurer defends against the action.

**7.** Of course, if the trial court possesses such discretion, we view the exercise of that discretion based on the familiar abuse of discretion standard.

[A] purchaser at a judicial sale will be excused from requirement [*sic*] to pay interest upon the unpaid balance for the period between the time fixed for settlement and the date of actual settlement only when the delay stems from [ (1) ] neglect on the part of the trustee; [ (2) ] was caused by necessary appellate review of lower court determinations or [ (3) ] was caused by the conduct of other persons beyond the power of the purchaser to control or ameliorate.

302 Md. at 477, 488 A.2d at 977 (citations omitted).

*Donald* presented a factual situation similar to the present case. *Donald* involved a mortgage foreclosure sale to three third-party purchasers of waterfront property owned by a partnership. 302 Md. at 467, 488 A.2d at 971. Three of the four partners were also junior creditors of the partnership who would not be paid in full from the proceeds of the sale unless the purchasers were required to pay the accruing interest on the sale price from the expected settlement date to the actual settlement. *Donald,* 302 Md. at 467–68, 488 A.2d at 971. The partners, by motion, sought to compel the trustee to collect such interest, to which the purchasers demurred. The trustee took no position on the motion.[8] *Donald,* 302 Md. at 468, 488 A.2d at 971. The Circuit Court for Anne Arundel County denied the partners' motion.

On appeal, the Court of Special Appeals affirmed the judgment in an unreported opinion. *Id.* Before the Court of Appeals, the partners argued that the common law mandated that purchasers at foreclosure sales should pay interest on the unpaid balance of the sale price from the expected date of settlement until settlement is achieved finally. *Id.* Although the Court acknowledged that general rule, it catalogued a series of cases excepting from the general rule certain equitable principles, yielding the three abatement circumstances previously noted. *Donald,* 302 Md. at 468–72, 488 A.2d at

---

8. As in our facts, the trustee in *Donald* also filed a motion to resell the property at the sole risk of the purchasers when the dispute over the interest began. *Donald v. Chaney,* 302 Md. 465, 472, 488 A.2d 971, 974 (1985).

972–74. The purchasers contended that any of five separate events surrounding the foreclosure sale in that case were sufficient to invoke equitable avoidance of the general rule against the abatement of interest. *Donald,* 302 Md. at 475–77, 488 A.2d at 976–77. The *Donald* Court, however, observed that the sole reason for the delay in settlement was the purchasers' inability to obtain proper financing, which reason failed to satisfy any of the three circumstances excusing the duty to pay interest. 302 Md. at 477–78, 488 A.2d at 977. Accordingly, the Court found that the Circuit Court's abatement of the interest in favor of the purchasers was clear error. *Donald,* 302 Md. at 478, 488 A.2d at 977.

While the relevant circumstances in *Donald* were found not to satisfy any of the principles for abating interest, such is not the case here. Petitioner's tenacious exploits to void the foreclosure sale and delay settlement places the present case squarely within the third equitable circumstance delineated in *Donald,* "conduct of other persons beyond the power of the purchaser to control or ameliorate." 302 Md. at 477, 488 A.2d at 977. The court filings catalogued previously, *see supra* footnote 1, illustrate the conclusion that the foreclosure purchasers were confronted with a significant amount of litigation maneuvers, albeit ultimately unavailing, which clouded their respective titles during their pendency. Settlement was delayed understandably.

Petitioner points to the language in the published notice of the foreclosure sale placing the burden of paying interest on the purchasers [9] as forbidding the Circuit Court's abatement of interest. Petitioner proffers the Court of Special Appeals's opinion in *White v. Simard;* 152 Md.App. 229, 831 A.2d 517 (2003), *judgment aff'd,* 383 Md. 257, 859 A.2d 168 (2004) as support for this argument. Specifically, we are directed to a quotation from the Court of Special Appeals's opinion in *White* for the proposition that the terms of sale found in an adver-

---

9. The "Terms of Sale" portion of the notice states "[i]nterest to be paid on the unpaid purchase money by the purchaser(s) at the rate of 13.5% per annum from the date of sale to the date of settlement."

tisement of a foreclosure sale are binding on the parties to that sale. 152 Md.App. at 248–49, 831 A.2d at 529. It is beyond cavil that, generally speaking, the express terms of a contract bind the parties and courts should not meddle in the affairs of the parties by modifying terms of the agreement to assist a disadvantaged party. *Walther v. Sovereign Bank,* 386 Md. 412, 429–30, 872 A.2d 735, 746 (2005) ("[O]ne of the most commonsensical principles of all of contract law [is] that a party that voluntarily signs a contract agrees to be bound by the terms of that contract."); *Calomiris v. Woods,* 353 Md. 425, 445, 727 A.2d 358, 368 (1999) ("Contracts play a critical role in allocating the risks and benefits of our economy, and courts generally should not disturb an unambiguous allocation of those risks in order to avoid adverse consequences for one party."); *Post v. Bregman,* 349 Md. 142, 169, 707 A.2d 806, 819 (1998) (" 'Parties have the right to make their contracts in what form they please, provided they consist [sic] with the law of the land; and it is the duty of the Courts so to construe them, if possible, as to maintain them in their integrity and entirety.' " (*quoting Md. Fertilizing & Mfg. Co. v. Newman,* 60 Md. 584, 588 (1883))); *Faller v. Faller,* 247 Md. 631, 638, 233 A.2d 807, 811 (1967).

That general rule is tempered, however, by the caveat that "fraud, duress, mistake, or some countervailing public policy" may serve as occasions to modify or excise certain terms of a contract. *Calomiris,* 353 Md. at 445, 727 A.2d at 368; *see also Md.-Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena,* 282 Md. 588, 605–07, 386 A.2d 1216, 1228–29 (1978); 5 Williston on Contracts § 12:3 (4th ed.1993); Restatement (Second) of Contracts §§ 178, 184(1) (1981); *cf. Holloway v. Faw, Casson & Co.,* 78 Md. App. 205, 230–39, 552 A.2d 1311, 1324–28 (1989), *aff'd in part, rev'd in part,* 319 Md. 324, 572 A.2d 510 (1990) (describing the "blue pencil" doctrine of contract law by which offensive terms are removed). The present case presents an occasion where public policy, in this case, the exercise of discretion pursuant to the equitable principles articulated in *Donald,* counsels that the provision allocating the payment of interest to the pur-

chaser was set aside properly. Petitioner's persistent and monotonous pleadings, advancing arguments rejected previously by the Circuit Court, served only to delay settlement on the properties and constituted "conduct of other persons beyond the power of the purchaser to control or ameliorate."

### C. Legality of the Five Percent Trustee Commission

We now address Petitioner's contention that the five percent trustee commission, contracted for in the deed of trust and paid to Respondent from the proceeds of the sale, constitutes an illegal penalty or, alternatively, an unenforceable liquidated damages provision. The thrust of Petitioner's argument is that the five percent commission is analogous to the five dollar "late fee" invalidated as a liquidated damage provision in *United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658, 732 A.2d 887 (1999), and therefore also must be disregarded. The analogy is not apt. We reject Petitioner's argument.

In *Burch*, we held that a five dollar charge assessed by a cable television provider against subscribers for late payment of their monthly bills was an illegal liquidated damages provision and a penalty because it exceeded an easily quantifiable actual damage amount. 354 Md. at 685, 732 A.2d at 901–02. The Circuit Court weighed the evidence presented at trial on the question of the actual damages incurred by late payments and found that the actual cost to the cable provider for such delinquencies was no more than fifty cents. *Burch*, 354 Md. at 666, 732 A.2d at 891. Relying on the Circuit Court's assessment of the quantum of actual damages,[10] we concluded that because the late fee charged by the cable provider was well in excess of the actual damages suffered, it constituted a penalty. *Burch*, 354 Md. at 672, 732 A.2d at 894.

---

**10.** Our own analysis of the evidence regarding actual damages resulted in a conclusion of ten cents, but, relying on the doctrine of harmless error, we did not disturb the Circuit Court's finding. *United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658, 685, 732 A.2d 887, 901–02 (1999).

■ The present case does not concern an arbitrary penalty for a late payment as in *Burch;* rather, it involves a standard rate of compensation for a trustee's services. Section 14–103(a)(1) of the Estates and Trusts Article, Md.Code (1974, 2001 Repl.Vol.), characterizes a trustee's commission as compensation for "services in administering the trust[ ]" as opposed to a punitive fee assessed on the mortgagor as a penalty for non-payment. *See also* Restatement (Second) of Trusts § 242 (1959) ("[T]he trustee is entitled to *compensation* out of the trust estate *for his services as trustee* . . . .") (emphasis added). While a commission is an eventual consequence of a foreclosure sale set in motion by the mortgagor's default on the loan, a commission is not characterized properly as a penalty.

Contrary to Petitioner's position, Maryland appellate opinions spanning over a century are replete with examples of the regularity of trustee commission amounts.[11] The Court of Special Appeals, in *Bunn v. Kuta,* affirmed a five percent trustee commission provided in a deed of trust,[12] noting that the rate of five percent is customary for trustee commissions

---

11. Precedent in this State long has recognized the propriety of trustee commissions on foreclosure sales of property occasioned by a default under a mortgage or deed of trust. *See, e.g., Brady v. Dilley,* 27 Md. 570, 583 (1867); *Maus v. McKellip,* 38 Md. 231, 238–39 (1873); *Widener v. Fay,* 51 Md. 273, 275–76 (1879) (affirming commission to trustee who died before his duties were complete); *Schneider v. Scarborough,* 198 Md. 303, 309, 83 A.2d 860, 863 (1951) ("Where the assignee of a mortgage has performed his work he is entitled to the commission stipulated to be paid in the mortgage. . . ."); *Hersh v. Allnutt,* 252 Md. 513, 518, 250 A.2d 629, 632 (1969); *Arundel Asphalt Prods., Inc. v. Morrison–Johnson, Inc.,* 256 Md. 170, 175, 259 A.2d 789, 792 (1969); *Lakrest Dev. Co. v. Eisele,* 258 Md. 45, 49, 265 A.2d 187, 189 (1970) (citing *Dorsey v. Omo,* 93 Md. 74, 79–80, 48 A. 741, 742–43 (1901)). Maryland appellate cases also demonstrate the allowance of commissions for the distribution of assets held in a testamentary or other type of trust. *See, e.g., Jenkins v. Whyte,* 62 Md. 427, 431 (1884); *Schloss v. Rives,* 162 Md. 346, 350, 159 A. 745, 746 (1932) ("[W]here the compensation of a conventional trustee is fixed in the instrument making the appointment, the same will ordinarily and generally be allowed."); *Sokol v. Nattans,* 26 Md.App. 65, 70–71, 337 A.2d 460, 463–64, *cert. denied,* 275 Md. 755 (1975).

12. *Bunn v. Kuta,* 109 Md.App. 53, 55, 69, 674 A.2d 26, 27, 34 (1996).

in Maryland. 109 Md.App. 53, 67 n. 1, 674 A.2d 26, 33 n. 1 (1996) (quoting Gordon on Maryland Foreclosures 925 (3d ed.1994)); *see also, e.g., Maus v. McKellip,* 38 Md. 231, 238–39 (1873). While it is true that "courts have the inherent power to review compensation paid to trustees from trust assets," [13] such that they may be lowered, as Petitioner implores, commissions also may be increased.[14] Nothing in the facts of this case amounts to "sufficient cause" to lower, much less eliminate, Respondent's commission for executing his duties, in light of Petitioner's persistent efforts to frustrate such execution. Because the Circuit Court did not abuse its discretion in ratifying the sale and the auditor's report containing the five percent commission, we shall not disturb the commission.

Rather, we adhere to the well-established rule stated in *Bunn* that "courts generally have deferred to the terms of a contractual agreement relating to compensation." 109 Md. App. at 61, 674 A.2d at 30; Md.Code (1974, 2001 Repl.Vol.) Estates & Trusts Art. § 14–103(a)(1) ("The amount and source of payment of the commissions [to trustees administering trusts concerning property] are subject to the provisions of any valid agreement."). Moreover, the *Bunn* court also held that "a provision in the instrument is given effect absent extraordinary or special circumstances." 109 Md.App. at 65, 674 A.2d at 32. We do not find any such circumstances here. Our holding is harmonious with the overarching contract law principle that express contract terms are enforced as written. *Calomiris,* 353 Md. at 445, 727 A.2d at 368 (quoting *Canaras v. Lift Truck Servs.,* 272 Md. 337, 350, 322 A.2d 866, 873 (1974)) ("It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof

---

**13.** *Bunn,* 109 Md.App. at 60–61, 674 A.2d at 30.

**14.** Md.Code (1974, 2001 Repl.Vol.) Estates & Trusts Art. § 14–103(a)(1) ("Any court having jurisdiction over the administration of the trust may *increase or diminish* the commissions for sufficient cause or may allow special commissions or compensation for services of an unusual nature.") (emphasis added).

**484**

are clear and unambiguous, simply to avoid hardships.' "); *see also* 11 Williston on Contracts § 31:4 (4th ed.1999); Restatement (Second) of Contracts § 18 (1981).

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.